Honorable Mary Margaret Haugen Senator, 10th Legislative District P.O. Box 40482 Olympia, WA 98504-0482
Dear Senator Haugen:
By letter previously acknowledged, you requested the opinion of this office on the following question:
In view of RCW 39.34.180, may a county refuse to negotiate and enter intoan interlocal agreement with a city within the county that desires toutilize the county criminal justice system for prosecution,adjudication, sentencing, and incarceration for adult misdemeanor andgross misdemeanor offenses that occur within the city?
Based on the analysis set forth below, we would respond to your question in the affirmative.
 ANALYSIS
As a general rule, counties are to be responsible for the cost of administering the criminal laws within their boundaries. State v. Agren,32 Wn. App. 827, 828, 650 P.2d 238 (1982); Whatcom County v. City ofBellingham, 128 Wn.2d 537, 909 P.2d 1303 (1996). For example, RCW36.27.020(4) requires a county's prosecuting attorney to prosecute all criminal actions in which the state or county may be a party. As the prosecuting attorney is a county official, the county treasury must pay for the cost of the official charged with these duties imposed on them by law. See AGO 1988 No. 9, at 4. In the past, as the Whatcom County Court explained, cities also assumed responsibility for criminal justice activities by enacting municipal criminal codes and prosecuting violations of those codes in municipal courts. Whatcom County,128 Wn.2d at 544. If the cities opted to eliminate the municipal criminal justice activities, the county would be required to take over those activities, which could result in considerable expense to the county. Id.
In 1984, the Legislature enacted the Court Improvement Act, because the cost of operating the court system was increasing at all levels. Final Legislative Report, 48th Leg. (1984), at 195 (Substitute Senate Bill 4430). Cities or towns were placing unanticipated burdens on county courts by abolishing municipal courts or repealing municipal criminal codes. Id. One of the provisions of the 1984 act prohibits a municipality from terminating its municipal court, unless the municipality and appropriate county enter into an agreement whereby the county is paid a reasonable amount for the costs of prosecution, adjudication, and sentencing associated with criminal filings in district court which result from the abolition of the municipal court. See RCW 3.46.150,35.20.010, 3.50.805(1). Similarly, a municipality "may not repeal in its entirety that portion of its municipal code defining crimes . . . unless the municipality has reached an agreement with the appropriate county under chapter 39.34 RCW under which the county is to be paid a reasonable amount for costs associated with prosecution, adjudication, and sentencing in criminal cases filed in district court as a result of the repeal." RCW 35.22.425; see also RCW 3.50.805(2); 35.22.425; 35.27.515;35.30.100; 35A.11.200; 35.23.555. These provisions contemplate the use of an interlocal agreement between the municipality and the county which "permit local government units to make the most efficient use of their powers by enabling them to cooperate with other localities" but does not require them to enter into certain agreements. See RCW 39.34.010.
Finally, the Legislature directed that a municipality which has already repealed its municipal criminal code but retained authority to process traffic infractions was required to enter into an agreement with the county before January 1, 1985, pursuant to RCW 39.34, under which the county is to be reimbursed for costs of prosecution, adjudication, and sentencing in cases filed in district court as a result of the repeal. RCW 3.50.800. If the municipality and county could not come to an agreement within the prescribed time, they were deemed to have entered into an agreement to submit the matter to arbitration under RCW 7.04. RCW 3.46.150; 3.50.800, .805; 35.22.425; 35.23.555; 35.27.515; 35.30.100;35A.11.200.
The legislative history of the 1984 act recognizes that counties will bear the burden of criminal activity costs if municipalities terminate their municipal courts and repeal their municipal criminal codes. Final Legislative Report, 48th Leg. (1984), at 195, 196 (Substitute Senate Bill 4430). If municipalities opted to do so, they were required to contract with the counties in order to shoulder some of the financial burden that would otherwise fall on the counties. Id. Where a city or town repealed only a portion of its municipal code but did not reach agreement with the county on apportionment of costs associated with those offenses, the county could not unilaterally assess costs against the city or town. (Emphasis added.) AGO 1988 No. 9, at 7. If the county officials believed that a municipality had violated the Act, the county's only recourse was to bring a court action seeking to establish the violation and the amount of compensation owing the county as a result of the violation. Id. at 8.
The cities and counties continued to disagree about the equitable apportionment of criminal justice costs as they apply to misdemeanor and gross misdemeanor offenses. Final Legislative Report, 54th Leg. (1996), at 160 (Engrossed Substitute Senate Bill 6211). Consequently, in 1996, the Legislature enacted RCW 39.34.180, which provides:
 (1) Each county, city, and town is responsible for the prosecution, adjudication, sentencing, and incarceration of misdemeanor and gross misdemeanor offenses committed by adults in their respective jurisdictions, and referred from their respective law enforcement agencies, whether filed under state law or city ordinance, and must carry out these responsibilities through the use of their own courts, staff, and facilities, or by entering into contracts or interlocal agreements under this chapter to provide these services. Nothing in this section is intended to alter the statutory responsibilities of each county for the prosecution, adjudication, sentencing, and incarceration for not more than one year of felony offenders, nor shall this section apply to any offense initially filed by the prosecuting attorney as a felony offense or an attempt to commit a felony offense.
 (2) The following principles must be followed in negotiating interlocal agreements or contracts: Cities and counties must consider (a) anticipated costs of services; and (b) anticipated and potential revenues to fund the services, including fines and fees, criminal justice funding, and state-authorized sales tax funding levied for criminal justice purposes.
 (3) If an agreement as to the levels of compensation within an interlocal agreement or contract for gross misdemeanor and misdemeanor services cannot be reached between a city and county, then either party may invoke binding arbitration on the compensation issued by notice to the other party. In the case of establishing initial compensation, the notice shall request arbitration within thirty days. In the case of nonrenewal of an existing contract or interlocal agreement, the notice must be given one hundred twenty days prior to the expiration of the existing contract or agreement and the existing contract or agreement remains in effect until a new agreement is reached or until an arbitration award on the matter of fees is made. The city and county each select one arbitrator, and the initial two arbitrators pick a third arbitrator.
 (4) For cities or towns that have not adopted, in whole or in part, criminal code or ordinance provisions related to misdemeanor and gross misdemeanor crimes as defined by state law, this section shall have no application until July 1, 1998.
RCW 39.34.180(1)-(4) (emphasis added).
Your question asks, in effect, whether this statute grants to a city or town unilaterally the choice of either establishing its own municipal court system or contracting with the county, or whether the county may foreclose the second option by declining to contract. If the county can decline to contract, the city or town is left with only one option — establishing its own courts, staff, and facilities to process misdemeanor offenses referred from the city's law enforcement agency. We can find nothing in subsection (1) of RCW 39.34.180 which would require a county to agree to contract with a city or town if the county simply did not wish to enter into an interlocal agreement on any terms.
By contrast, subsections (2) and (3) of the statute provide in some detail a procedure for resolving disputes if a county and city, havingagreed to negotiate a contract, are unable to agree on the financial terms of the contract. Subsection (3) provides that binding arbitration may be invoked "[i]f an agreement as to the levels of compensation withinan interlocal agreement or contract" cannot be reached. Id. (emphasis added). The statute does not provide for such arbitration on the question whether the county must enter into the agreement itself. Therefore, we conclude that a county may decline to enter into an agreement at all and that this decision is not subject to arbitration. However, if the county, having agreed to contract, disagrees with the city or town about the appropriate level of compensation, the binding arbitration provisions apply. The county in that case would not have the option of withdrawing from the contract; such an act would be inconsistent with the arbitration provisions in the statute.
Finally, an additional question remains if a county and city, having previously negotiated an agreement, are now faced with the question whether to renew it. Given the language of the statute, we conclude that either the city or the county may, upon the expiration of an interlocal agreement, decline to enter into a new agreement. The city has this option because RCW 39.34.180 clearly allows the municipality to meet its obligations in either of two ways. By the same reasoning as above, we conclude that the county also has the option of declining to renew an agreement. Subsection (3) of RCW 39.34.180 requires, in the case of a contract renewal, that notice must be given 120 days before the contract expires. The context establishes that this "notice" is, in effect, notice invoking the arbitration provisions, provided early enough to allow the arbitration process to be completed (or nearly so) during the final months of the old contract.
Given that language, we conclude that a county not intending to renew a contract must firmly express its position well in advance of the expiration of the previous contract, both to avoid giving the impression that a new agreement can be negotiated and to give the municipality plenty of time to establish (or re-establish) its own municipal court system. The county would not have the option of first entering into negotiations about a new contract and then, if dissatisfied with the direction of the negotiations, invoking its right not to renew the agreement. Once negotiations begin, the arbitration provisions of the statute become applicable. This reading is consistent with the language of the statute and also promotes its underlying goal of fair and equitable dealing between local governments.
We trust the foregoing will be of assistance to you.
Very truly yours,
MARY JO DIAZ Assistant Attorney General