**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 12, 2020

*Steprc, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 12,, 2020

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| DEREK GRONQUIST,<br><br>        Respondent,<br><br>RICHARD KING and RICHARD JACKSON, individually and representing a class of similarly situated individuals,<br><br>        Plaintiffs<br>  v.<br><br>DEPARTMENT OF CORRECTIONS OF THE STATE OF WASHINGTON,<br><br>        Defendant,<br><br>KING COUNTY PROSECUTOR DANIEL SATTERBERG,<br><br>        Petitioner,<br>  v.<br><br>CHASE RIVELAND and JANET BARBOUR, in their official capacities; the INDETERMINATE SENTENCING REVIEW BOARD; and KEN EIKENBERRY, in his official capacity as Attorney General of the State of Washington,<br><br>        Defendants. | NO. 97277-0<br><br>EN BANC<br><br>Filed: November 12, 2020 |

STEPHENS, C.J.—Courts may impose remedial sanctions in favor of a

person who is "aggrieved by a contempt of court in the proceeding to which the

contempt is related." RCW 7.21.030(1). Among available sanctions is an order to pay "for any losses suffered by the party as a result of the contempt and any costs incurred in connection with the contempt proceeding, including reasonable attorney's fees." *Id.* at .030(3). This case requires us to decide whether courts have discretion to impose remedial sanctions under RCW 7.21.030(3) in the absence of ongoing, continuing contempt. We hold they do. However, because Derek Gronquist failed to establish that he suffered any compensable losses, and because there is no ongoing contempt, any claim for sanctions here is moot. Accordingly, we reverse the Court of Appeals.

## FACTS

Gronquist was convicted of violent sexual offenses in 1988. While confined, he participated in a sex offender treatment program until 1991. That same year, former participants of the program brought a class action against the Department of Corrections (Department) to enjoin the release of their treatment files, which contained extensive medical and personal information. *See King v. Riveland*, 125 Wn.2d 500, 502-04, 886 P.2d 160 (1994). Gronquist was not a named class member. The case resulted in a permanent injunction in 1993 that prohibited the Department from releasing certain documents from any class member's file. Though not a

named party in *King*, Gronquist fell within the class of persons protected by the *King* injunction.

As Gronquist approached his earned early release date, the Department referred him to the King County prosecutor for possible commitment as a sexually violent predator. Under then-current statutory law, the prosecutor sought all records relating to Gronquist's treatment.

Gronquist filed a civil contempt motion against the Department and the King County prosecutor for releasing his treatment records. He also sought an accounting for all breaches of the injunction, an order transferring him to community custody, destruction of all improperly disclosed confidential information, at least $500 a day per contemnor, disqualification of a potential expert witness, and attorney fees and costs under RCW 7.21.030(3). Gronquist's claims were not inconsequential: it appears likely the Department and the prosecutor shared some of Gronquist's files in direct contravention of a valid injunction.[1] On motion by the Department, and

---

[1] We are sympathetic to the difficult position in which the Department and the King County prosecutor found themselves with respect to the 1993 injunction. Nonetheless, while these facts may inform whether violation of a valid court order was truly "malicious," and so may be relevant to a trial court's decision of what remedial sanctions are appropriate under RCW 7.21.030(2), we do not believe they are relevant to the court's consideration of what compensation is appropriate to an injured party under RCW 7.21.030(3). The court's decision of whether and how to compensate an injured party involves an analysis of the extent of the harm suffered, not the blameworthiness of the contemnor.

before considering Gronquist's contempt motion on the merits, the trial court prospectively invalidated the 1993 *King* injunction as to Gronquist. Neither the merits of that decision nor the validity of the injunction is before us.

After transferring the remainder of Gronquist's treatment files, the Department moved to dismiss Gronquist's contempt motion as moot, arguing that, absent the Department's continuing contempt of the now-invalidated injunction, the trial court could no longer impose coercive, remedial sanctions. The trial court granted the Department's motion to dismiss in an oral ruling, but the hearing transcript of that proceeding, along with the trial court's reasoning, was omitted from the record. The trial court's written order incorporating its oral ruling simply states, "Defendant's Motion to Deny Intervenor Gronquist's Motion for Contempt is **GRANTED**; [] Intervenor Gronquist's motion for contempt is denied as moot." Clerk's Papers (CP) at 741-42.

Gronquist appealed the trial court's ruling. The Court of Appeals reversed, holding Gronquist's motion was not moot because a compensatory order for losses and attorney fees could still be awarded. *Gronquist v. Dep't of Corr.*, No. 49392-6-II, slip op. at 2 (Wash. Ct. App. Feb. 26, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2049392-6-II%20Order%20Amend-ing%20Opinion.pdf. The Department and the prosecutor petitioned this court for

review, arguing that Gronquist's contempt motion, and any attendant relief sought, became moot once the trial court could no longer impose coercive sanctions. We granted the petition. *Gronquist v. King County Prosecutor*, 193 Wn.2d 1037 (2019).

ANALYSIS

Whether a claim is moot is a question of law, which we review de novo. De novo review also applies to questions of statutory interpretation. Applying de novo review, and interpreting the distinct remedy provisions in RCW 7.21.030, we hold that continuing or ongoing contempt is not a prerequisite to a trial court's ability to fashion a remedy for a party's losses under .030(3). Gronquist's civil contempt motion is nonetheless moot because he failed to allege any compensable losses.

1. *When a Cause of Action Is Dismissed as Moot, the Proper Standard of Review Is De Novo*

As an initial matter, it is important to note that the trial court did not make any determination as to whether contempt was warranted; rather, it simply denied Gronquist's motion for contempt as moot. CP at 741-42. Whether a legal claim or issue is moot raises a question of law, which this court reviews de novo. *See Barr v. Snohomish County Sheriff*, 193 Wn.2d 330, 335, 440 P.3d 131 (2019) (citing *Cost Mgmt. Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 641, 310 P.3d 804 (2013)). A case becomes moot when a court can no longer provide effective relief. *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 602, 229 P.3d 774 (2010) (citing

*In re Recall Charges Against Seattle Sch. Dist. No. 1 Dirs. Butler-Wall*, 162 Wn.2d

501, 505, 173 P.3d 265 (2007)); *City of Sequim v. Malkasian*, 157 Wn.2d 251, 259,

138 P.3d 943 (2006) ("'The central question of all mootness problems is whether

changes in the circumstances that prevailed at the beginning of litigation have

forestalled any occasion for meaningful relief.'" (quoting 13A CHARLES ALAN

WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND

PROCEDURE § 3533.3, at 261 (2d ed. 1984))).

Because mootness was the basis for the trial court's decision, the correct

standard of review is de novo.[2] Applying this standard, we address whether a finding

of *continuing contempt* is required for the trial court to exercise its discretionary

authority to order a contemnor to compensate a moving party for any losses, costs,

and attorney fees.

---

[2] The Department appears to concede this fact, as it has effectively abandoned its former argument for abuse of discretion review. *Compare* Br. of Resp't Dep't of Corr. at 4-5 (Wash. Ct. App. No. 49392-6-II (2018)) (arguing for abuse of discretion review), *with* Dep't of Corr.' Suppl. Br. at 4-20 (failing to challenge the Court of Appeals' determination that the proper standard of review is de novo). This concession is well taken; in moving to dismiss, the Department exclusively argued that Gronquist's motion for contempt was moot. CP at 599-604, 715-21. Because the sole question before us is the legal question of whether the statute affords a contempt remedy at all in the absence of ongoing contempt, there is no basis for abuse of discretion review.

2. *Continuing Contempt is Not a Prerequisite To Granting Compensatory Relief under RCW 7.21.030(3)*

Intentional disobedience of any lawful court order is contempt of court. RCW 7.21.010(1)(b). In addition to their inherent contempt powers, courts are statutorily authorized to impose both punitive and remedial sanctions. Remedial sanctions are civil sanctions imposed "for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act *that is yet in the person's power to perform.*" RCW 7.21.010(3) (emphasis added); *In re Pers. Restraint of King*, 110 Wn.2d 793, 799-800, 756 P.2d 1303 (1988). Washington's civil contempt statute outlines the court's authority to impose remedial sanctions designed to coerce a contemnor into purging continuing contempt. RCW 7.21.030(2). Specifically, before imposing coercive sanctions under .030(2), the court must first find that "the [contemnor] has failed or refused to perform an act that is yet within the person's power to perform." *Id.*

This prerequisite is limited to subsection (2). In contrast, subsection (3) of the civil contempt statute provides that "[t]he court may, *in addition to the remedial sanctions set forth in subsection (2)* of this section, order a person found in contempt of court to pay a party for *any losses suffered by the party as a result of the contempt* and any costs incurred in connection with the contempt proceeding, including reasonable attorney's fees." RCW 7.21.030(3) (emphasis added). Subsection (3),

by its plain terms, does not predicate the court's authority to order compensatory relief on a finding of *continuing* contempt, nor does it state that an order must serve a coercive purpose.

We apply ordinary rules of statutory construction to decide whether a court's authority to issue a compensatory order under subsection (3) against a contemnor is subject to subsection (2)'s restrictions on imposing remedial sanctions. We review questions of statutory interpretation de novo. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 457-58, 430 P.3d 655 (2018) (citing *State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013)). Our starting point in interpreting a statute is the statute's plain language and ordinary meaning. *Id.* "When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). "'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" *Spokane County*, 192 Wn.2d at 458 (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)). Further, "'a reading that results in absurd results must be avoided because it will not

be presumed that the legislature intended absurd results.'" *Id*. (quoting *State v. Delgado*, 148 Wn.2d 723, 733, 63 P.3d 792 (2003)).

The Department and the prosecutor argue that a finding of contempt under subsection (3) cannot be premised on *past* contempt. But, as the Department correctly acknowledges, the award of "losses" under RCW 7.21.030(3) is conditioned only upon a party being "found in contempt of court." RCW 7.21.010(1)—not RCW 7.21.030(2)—defines "contempt of court," and the legislature expressly intended for that definition to apply throughout the entirety of chapter 7.21 RCW. *See* RCW 7.21.010. In contrast to RCW 7.21.010(1)'s broad contempt of court definition, the legislature inserted language into subsection (2) limiting that provision's reach to continuing contempt, nothing more. *See* RCW 7.21.030(2). The absence of similar limiting language in subsection (3) indicates the legislature intended the broader definition provided in RCW 7.21.010(1) to apply.

The Department argues subsection (2)'s narrower definition of contempt extends to subsection (3) through the operation of subsection (3)'s "in addition to" language, which states that "[t]he court may, *in addition to the remedial sanctions set forth in subsection (2) of this section*, order a person found in contempt of court to pay a party . . . ." RCW 7.21.030(3) (emphasis added). But this is an unnatural

reading. Despite the Department's assertion that this "in addition to" language means the court may issue an order under subsection (3) only if it additionally imposes remedial sanctions under subsection (2), the phrase "in addition to" reasonably means the court can do more. *Compare* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 24, 1606 (2002) (defining the prepositional phrase "in addition to" to mean "over and above"; "besides"); *with* OXFORD LEARNER'S DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/english/addition #addition_idmg_1 (defining "in addition to" as an idiom "used when you want to mention another person or thing after something else") [https://perma.cc/2PGZ-KJPU].

We acknowledge there may be multiple, reasonable meanings of this phrase. But when the language of a provision, the context of the statute in which the provision is found, and the statutory scheme as a whole are not conclusive as to legislative intent, we look to legislative history and other aids. *Evans*, 177 Wn.2d at 192-93. "The court has frequently looked to final bill reports as part of an inquiry into legislative history." *State v. Bash*, 130 Wn.2d 594, 601, 925 P.2d 978 (1996) (plurality opinion). Here, the final legislative report on Substitute House Bill 1983, which enacted chapter 7.21 RCW, states that "[t]he court may indemnify any person injured by a person's contemptuous conduct." FINAL LEGISLATIVE REPORT, 51st

Leg., at 139-40 (Wash. 1989). Though not dispositive, this report, like subsection (3), speaks broadly of the court's authority to compensate or indemnify an injured person without any limiting language regarding the coercive effect of the order or continuing nature of the contemptuous conduct.

Adopting the Department's contrary reading of subsection (3) would lead to untenable results, disallowing any remedy when an act of contempt is discontinued at the eleventh hour. Under this reading, any losses and costs a party suffered as a result of contemptuous conduct that is purged just before a finding of contempt is entered would be unrecoverable under this statute. This proposed result stands in stark contrast with subsection (3)'s broad language authorizing compensatory orders for *any* losses. Worse, under the Department's proposed interpretation, even *after* a finding of contempt and the imposition of remedial sanctions under subsection (2), courts would still be powerless to order a contemnor to compensate a party for losses and costs incurred *prior* to the finding of contempt.

Such a stingy interpretation would undermine the very purpose of the statute—to encourage compliance with court orders—and would reward contumacious behavior by affording a class of contemnors safe harbor to violate court orders. Because subsection (3) does not require a finding of continuing contempt, the most reasonable interpretation of the legislature's use of the phrases

"*any* losses" and "*any* costs" is that it encompasses those losses and costs incurred prior to a finding of contempt, including those incurred after a contemnor purges the contempt and thus renders coercive sanctions unavailable.

Contrary to the Department's argument, this interpretation does not improperly blend the concepts of punitive and coercive contempt sanctions. It is true that we have repeatedly affirmed that civil contempt sanctions are coercive and criminal contempt sanctions are punitive. *See In re King,* 110 Wn.2d at 800 (stating that "[a] civil contempt sanction is coercive and remedial, and is typically for the benefit of another party; a criminal sanction is punitive and is imposed for the purpose of vindicating the authority of the court"). From this general statement, the Department asserts that a compensatory order that reaches any losses and costs incurred *before* a finding of contempt is, inherently, not coercive. But the Department errs by assuming that any contempt action that is *not* coercive *must* be punitive. As we have previously reasoned, "In determining whether a particular contempt sanction is civil or criminal, we look to the substance of the proceeding *and the character of the relief that the proceeding will afford*." *Id.* at 799 (emphasis added). Though not necessarily coercive in nature, subsection (3) compensatory orders fulfill another recognized civil contempt function: compensation to the injured party. *See id.* at 800.

A key purpose underlying the past-punitive/continuing-coercive distinction in contempt actions is to ensure that courts afford criminal defendants proper due process protection when imposing criminal sanctions. *Id.* at 800 (citing *State v. Boatman,* 104 Wn.2d 44, 46-47, 700 P.2d 1152 (1985); *State v. Browet, Inc.,* 103 Wn.2d 215, 219, 691 P.2d 571 (1984)). However, such criminal due process concerns are not implicated by a compensatory award—a fact reflected in the legislature's placement of this compensatory order authority within the civil contempt statute—and its omission from the criminal contempt statute. And though the Department argues that a compensatory order to pay losses incurred from a party's contempt *must* be coercive if it is to be a permissible civil contempt action, both the title of the civil contempt statute ("Remedial sanctions—Payments for losses") and the broad text of subsection (3) distinguish this compensatory order for payment of losses from other coercive, remedial sanctions. As shown, compensatory orders authorized under subsection (3) provide plaintiffs with relief that is distinct in both purpose and form from remedial sanctions authorized under subsection (2). It stands to reason that the legislature would craft distinct statutory requirements for awarding these distinct forms of relief.

The plain text of subsection (3)'s authorization is broad, allowing courts to order a contemnor to pay for *any* losses and costs, conditioned only on a finding of

contempt, not *continuing* contempt. Contrary to the Department and prosecutor's assertions, interpreting subsection (3) to permit appropriate compensatory orders does not require inserting language into the statute; we rely on a straightforward application of the statute as written. *See State v. Glas,* 147 Wn.2d 410, 417, 54 P.3d 147 (2002). Accordingly, we hold that a civil contempt motion is not moot simply because coercive, remedial sanctions are no longer available under subsection (2). A court may order compensatory relief under subsection (3) for specific losses suffered as a result of the contempt. The remaining question is whether Gronquist has shown entitlement to compensatory relief in this case.

3. *Gronquist's Contempt Motion Is Moot Because He Failed To Allege Any Compensable Losses*

In his contempt motion, Gronquist sought a number of remedies, including a request for an award of cost and attorney fees under RCW 7.21.030(3).[3] Such an award is purely discretionary. RCW 7.21.030(3) (stating the court "may" order such an award). A party raising a claim for costs and attorney fees under subsection (3) must first allege some underlying contemptuous conduct and establish a violation of Washington's civil contempt statute.

---

[3] Following the trial court's prospective invalidation of the injunction as to Gronquist and the Department's lawful transfer of Gronquist's remaining treatment files, his remaining remedies were effectively extinguished.

As explained, the superior court had discretion under RCW 7.21.030(3) to enter an order in favor of Gronquist for any compensable losses, even in the absence of continuing contempt. However, Gronquist did not allege any compensable losses suffered as a result of contempt; he sought only costs and fees incurred in bringing the contempt motion. Unlike the recovery of a party's losses, an award of costs and attorney fees is intended to facilitate litigation on the merits: it does not provide a remedy for the alleged contempt itself.

Absent any actual compensable losses, further litigation to resolve whether the Department and the prosecutor were once in contempt becomes a purely academic question—the answer to which cannot afford Gronquist any "effective relief" from the alleged contempt. *See Malkasian*, 157 Wn.2d at 259 (requiring the availability of effective relief on a petitioner's claim to bar dismissal of an action for mootness). Gronquist's contempt motion is therefore moot, and permitting further litigation to determine only whether he is potentially entitled to a discretionary award of costs and fees is unnecessary.

## CONCLUSION

Applying de novo review, we hold that a civil contempt motion is not necessarily moot when coercive sanctions are no longer available under RCW 7.21.030(2). The court has discretion to enter a compensatory order for losses and

costs under RCW 7.21.030(3). Nonetheless, Gronquist's motion is moot because he suffered no compensable losses due to contempt, and his claim for attorney's fees and costs in bringing a contempt motion cannot provide effective relief from the Department's alleged contempt. Accordingly, we reverse the Court of Appeals and reinstate the trial court's dismissal of Gronquist's contempt motion as moot.

_____, C. J.
Stephens, C. J.

WE CONCUR:

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

_____

_____

_____, J.P.T.
Chun, J.P.T.

No. 97277-0

GONZÁLEZ, J. (concurring)— I concur with much in the majority opinion,
and I concur in result. I write separately to emphasize that RCW 7.21.030 does not
create a stand-alone cause of action for damages. A judge must find contempt
before making a compensatory award for that contempt. RCW 7.21.030(2), (3).
The decision of whether to hold a party in contempt rests in the sound discretion of
the judge given the circumstances of the case. *See In re Pers. Restraint of King*,
110 Wn.2d 793, 798, 756 P.2d 1303 (1988) (citing *Schuster v. Schuster*, 90 Wn.2d
626, 630, 585 P.2d 130 (1978)).

I also write to emphasize that whether to grant or dissolve an injunction also
lies within the sound discretion of the judge. *Wash. Fed'n of State Emps., Council
28 v. State*, 99 Wn.2d 878, 887, 665 P.2d 1337 (1983) (citing *Alderwood Assocs. v.
Wash. Envtl. Council*, 96 Wn.2d 230, 233, 635 P.2d 108 (1981)). In this case, and
before considering Gronquist's contempt motion for an alleged violation of the
injunction, the trial court prospectively invalidated the injunction as it applied to
Gronquist and gave Gronquist an opportunity to challenge that decision. For
various reasons, no challenge was perfected, and the merits of the decision to
vacate the injunction are not before us.

1

After a suitable opportunity to challenge the decision to vacate the injunction, the trial court dismissed the contempt motion as moot and did not award any compensation or attorney fees. Unfortunately, the parties elected not to designate the transcript of that hearing on review, despite the fact the trial judge incorporated the oral ruling as part of the summary judgment order. CP at 741-42. Given that, it may well be the court dismissed the case merely on mootness grounds, in which case de novo review is appropriate. But if the court merely dismissed this case on mootness grounds, there would have been little cause to incorporate the oral ruling.

Regardless, in this case, the only damages alleged were attorney fees. Attorney fees might well be within the sound discretion of the court had they been accrued to enforce an injunction. But given that the 1993 injunction had been vacated as to Gronquist at the time the contempt motion was heard, and given that Gronquist articulated no compensable losses for the prior violations of the injunction other than attorney fees, I agree with the majority that the trial judge did not err in dismissing this case on summary judgment.

González, J.

Yu, J.

Montoya-Lewis, J.

Wiggins, J.P.T.