[No. 78139-7. En Banc.]
Argued November 9, 2006.    Decided March 1, 2007.

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Petitioner*, v. WILLIAM A. GRANGER, *Respondent*.

*Robert M. McKenna, Attorney General,* and *John R. Wasberg, Senior Counsel,* for petitioner.

*Terry J. Barnett* (of *Rumbaugh Rideout Barnett & Adkins*), for respondent.

¶1 BRIDGE, J. — The Department of Labor and Industries (Department) seeks review of a decision of Division One of the Court of Appeals which determined that the health care payments Granger's employer made to a trust on his behalf should be included in his monthly wage calculation for purposes of determining disability benefits. The Department argues that because Granger was not eligible to receive the benefits of that trust at the time of his injury, the payments made to the trust should not be included in the calculation. Granger argues that because his employer was paying $2.15 per hour to the trust in return for Granger's work, that amount represents his earning capacity at the time of his injury and thus should be included in the calculation. We agree with Granger and affirm the Court of Appeals.

I

## Facts and Procedural History

¶2 William Granger was a 31-year member of the Union Local 292 of Washington and Northern Idaho District Council of Laborers. Under the union's trust fund rules, eligibility for medical benefits was based upon an "hour-bank system." Clerk's Papers (CP) at 29. In addition to his hourly wage, for every hour that Granger worked, his employer paid $2.15 for medical benefits into a trust account. Once he had obtained 200 hours, he was initially eligible for the coverage. For every month that he worked, his employer deducted 120 hours for the medical coverage, which began the first day of the following month. That is, if Granger had 120 hours in his hour bank at the end of March, his employer would deduct those hours from his hour bank and he would have medical coverage for the month of April. If his total accumulated hours dropped below 120, he was no longer eligible for the benefits, but he would be eligible again if he reached the requisite 120 hours within 10 months. An employee could accrue up to 1,080 hours in the hour bank.

¶3 On April 20, 1995, Granger sustained an industrial injury while employed by G.G. Richardson, Inc. Although Granger had previously reached the requisite 200 hours for initial health care eligibility, his health care coverage had lapsed on March 31, 1995 due to insufficient hours. At the time of his injury, Granger's employer had been making payments to the health care trust, but as of April 20, he had accrued only 64 hours in his hour bank. Granger filed an application with the Department, seeking industrial insurance benefits. The Department issued an order allowing his claim, but in calculating his monthly wage (upon which his time-loss compensation would be based), it did not include the money that his employer was paying for health care coverage.

¶4 Granger's challenge to this order remained pending for years, but on July 9, 2002, the Department issued a final

order affirming that the time-loss compensation rate would not include the money that Granger's employer had been paying for his health care. Granger appealed this decision to the Board of Industrial Insurance Appeals (Board), and on August 4, 2003, the industrial appeals judge (IAJ) issued a proposed decision and order upholding the Department's order. Granger then petitioned for review by the full Board, which reversed the IAJ and the Department and ordered the Department to include the $2.15 per hour in the monthly wage computation. The Department appealed the order to Skagit County Superior Court, and on September 29, 2004, that court affirmed the Board's order. The Department timely appealed, and on October 31, 2005, Division One affirmed the superior court's decision. *Dep't of Labor & Indus. v. Granger*, 130 Wn. App. 489, 123 P.3d 858 (2005). The Department sought review in this court, which we accepted on September 7, 2006. *Dep't of Labor & Indus. v. Granger*, 157 Wn.2d 1021 (2006).

II

Analysis

■■ ¶5 <u>RCW 51.08.178.</u> This case poses a question of statutory interpretation, a question of law that we review de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). The legislature has mandated that Title 51 RCW be "liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. Of course, we may not construe the statute in a way that would lead to a "strained or unrealistic interpretation." *Senate Republican Campaign Comm. v. Pub. Disclosure Comm'n*, 133 Wn.2d 229, 243, 943 P.2d 1358 (1997). However, "where reasonable minds can differ over what Title 51 RCW provisions mean, in keeping with the legislation's fundamental purpose, the benefit of the doubt belongs to the injured worker . . . ." *Cockle*, 142 Wn.2d at 811.

¶6 RCW 51.08.178(1) provides that

the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed . . . .

. . . .

The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire . . . .

¶7 *Cockle* was the first case in which we considered "whether the value of employer-provided health care coverage is included in the basis used to calculate workers' compensation payments under RCW 51.08.178." *Cockle*, 142 Wn.2d at 805. In that case, Cockle's employer paid her $5.61 per hour and also paid her health insurance premiums at a rate of $205.52 per month. *Id.* When Cockle was injured in the course of her employment, the Department calculated her compensation based upon only her paycheck earnings, and not her health care coverage. *Id.* at 805-06.

¶8 We found that although the use of the phrase "consideration of like nature" limited the kinds of consideration to be considered "wages" under the statute, health care coverage was one of the "[c]ore, nonfringe benefits" that must be included. *See id.* at 810, 822-23. We determined that "consideration of like nature" includes those benefits that are "readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting workers' basic health and survival." *Id.* at 822. This became known as the "*Cockle* test." *See Gallo v. Dep't of Labor & Indus.*, 155 Wn.2d 470, 482-83, 120 P.3d 564 (2005).

¶9 Four years later, we again addressed the issue of the types of consideration to be included in the compensation calculation. In *Gallo*, we were asked whether employer contributions to retirement trust funds, apprenticeship training funds, the Laborers-Employers Cooperation and Education Trust Fund, and life and disability insurance trust funds should be included in the monthly wage calcu-

lation to determine compensation. In that case, the workers argued that *all* wages paid under their collective bargaining agreements should be considered as cash wages because the employer paid an hourly sum that was then diverted to various trusts. We rejected that argument, reiterating that in *Cockle* we found that "the legislature did not intend that *all* consideration given in exchange for work is to be included in 'wages.'" *Id.* at 484 (emphasis added) (quoting *Cockle*, 142 Wn.2d at 808). Rather, we applied the *Cockle* test to the benefits at issue and found that none of them constituted "consideration of like nature." *See id.* at 491-93.

¶10 We must here decide whether the payments that an employer was making to an employee's health care trust fund at the time of the employee's injury should be included in the wage calculation if the employee was not entitled to the trust benefits at that time. Although the parties ask us to construe the meaning of "receiving at the time of the injury," the disagreement also requires us to determine what constitutes "consideration": the payments to the trust or the coverage itself.

¶11 The Department argues that the coverage itself is the consideration and, therefore, where the employee was not entitled to receive this consideration at the time of the injury, he may not have the value of the benefit included in the wage calculation. Pet. for Review at 7. Granger, on the other hand, argues that the $2.15 per hour that the employer paid for the health care coverage is the consideration and that because he was earning this money at the time of the injury, it must be included in his wage calculation in order to most accurately reflect his lost earning capacity. *See* Answer to Pet. for Review at 4. Therefore, in construing RCW 51.08.178, we must determine whether focus should be upon the payments to the trust or the coverage itself.

¶12 The Department contends that the plain language of RCW 51.08.178 requires a worker to be receiving *benefits* at the time of an industrial injury in order for those benefits to be included as part of monthly wages, and that Division One erred when it failed to recognize that the "receiving at

the time of the injury" requirement of RCW 51.08.178 is unambiguous. Pet. for Review at 9. The Department argues that the meaning of "receive" is plain on its face, *see* Suppl. Br. of Pet'r at 8, and cites *Harris v. Department of Labor & Industries*, 120 Wn.2d 461, 472, 843 P.2d 1056 (1993), where we determined that "[t]o receive is to 'take possession or delivery of' something" (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1894 (1976)). Additionally, the Department argues that because the wage calculation under Title 51 RCW is based upon lost earning capacity, "monthly wages cannot include wages that the worker did not lose due to injury," and that "[c]onsideration that only *might be* received at some unknown time in the future, depending on certain contingencies, is not within the scope of RCW 51.08.178." Suppl. Br. of Pet'r at 9-10.[1]

¶13 Granger does not disagree that "receive" is unambiguous, but he argues that he was in fact receiving the disputed $2.15 per hour at the time of the injury. *See* Suppl. Br. of Resp't at 11. He argues that "receiving" in the statute addresses earning capacity and that "[t]he $2.15 an hour showed *earning capacity* whether or not, at the time of [his] industrial injury, he had health care coverage." Answer to Pet. for Review at 11; Suppl. Br. of Resp't at 11 (emphasis added). Granger further contends that the In-

---

[1] The Department cites Board decisions in other cases that have "[p]roperly [g]iven [e]ffect to the [u]nambiguous '[r]eceiving at the [t]ime of the [i]njury' [r]equirement of RCW 51.08.178" and argues that we may consider them for persuasive value. Suppl. Br. of Pet'r at 10. But the cases that the Department cites are not analogous to the facts here. In one case, the injured worker had been working part time at the time of his injury but argued that because "[h]e believed that he would have been returned to a full-time position in approximately [a year and a half]," he should be compensated as if he were working full time. *In re Jackson*, No. 99 21831, at 3, Bd. of Indus. Ins. Appeals (Wash. Aug. 13, 2001). In the other case, the injured worker argued that he had the ability to earn more money than he actually was earning at the time of his injury and thus the higher earning capacity, rather than his actual wage, should be the basis for the compensation calculation. *In re Brown*, No. 88 1326, Bd. of Indus. Ins. Appeals (Wash. June 29, 1989). The Department contends that Granger is similarly arguing for compensation based upon an "anticipated increase in future wages." *See* Suppl. Br. of Pet'r at 12. Granger responds that *Jackson* and *Brown* differ from the instant case because here his actual earning capacity at the time of the injury included the $2.15 per hour. *See* Answer to Pet. for Review at 12. We agree with Granger and find that *Jackson* and *Brown* are not persuasive.

dustrial Insurance Act, Title 51 RCW, not the union's trust rules, should govern the determination of his earning capacity. *See* Resp't's Am. Br. at 2 n.7. Granger concludes that under the plain language of the act, he "was receiving the $2.15 an hour at the time of injury." Answer to Pet. for Review at 4.

¶14 The Court of Appeals, superior court, and Board all agreed with Granger, finding that payment of the $2.15 per hour constituted receipt of the benefit. *See Granger*, 130 Wn. App. at 496 ("Because Granger's employer was paying $2.15 per hour for his health care coverage, Granger was receiving that benefit at the time of injury."); CP at 118 (superior court judgment) ("Amounts paid into union trust funds for health care benefits represent earning capacity . . . regardless of whether the workers are eligible for the benefits provided by the fund."); CP at 7 (board decision) ("The analysis . . . should turn on the **receipt of the monetary benefit for coverage**, not the realization of the coverage itself."). We agree as well.

¶15 In *Gallo*, we found that the workers "received" their retirement benefit when their employers paid into the retirement trust fund. *Gallo*, 155 Wn.2d at 491. Although we rejected Gallo's argument that the payment for her retirement benefit should be included in her wage calculation, we did so not because she was not "receiving" the benefit at the time of her injury but because it was not of like nature to board, fuel, or housing. *Gallo*, 155 Wn.2d at 491-92. Therefore, Granger is correct that the focus is upon payment for the benefit and not entitlement to the coverage.

¶16 The Department argues that *Gallo* can be distinguished from the instant case because "[h]ere, *health* benefits, not *retirement* benefits, are involved, and Granger was not 'receiving' a health benefit per the *Harris* Court's interpretation of the term 'receiving' as meaning to 'take possession or delivery of.' " Suppl. Br. of Pet'r at 13-14. However, the workers in *Gallo* were not "taking possession of" their retirement benefit either, but we still found that

they "received" the benefit when their employers paid into the trust fund. *Gallo*, 155 Wn.2d at 485 (stating that "the workers in this case never received, in hand, the benefit payments"); *id.* at 491 ("Clearly, the workers were 'receiving' the retirement benefit at the time of the injury because the employer was making payments into the retirement trust."). We are not persuaded that the health care coverage at issue here can be distinguished from retirement funds at issue in *Gallo* for purposes of determining receipt of the benefit.

¶17 Additionally, " '[t]he meaning of a particular word in a statute is not gleaned from that word alone, because our purpose is to ascertain legislative intent of the statute as a whole.' " *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 970-71, 977 P.2d 554 (1999) (internal quotation marks omitted) (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)). We have repeatedly found that the purpose of Title 51 RCW is to protect a worker's earning capacity. *Gallo*, 155 Wn.2d at 481 (" 'The purpose of time-loss compensation is to reflect a worker's lost earning capacity.' " (quoting *Double D Hop Ranch v. Sanchez*, 133 Wn.2d 793, 798, 947 P.2d 727, 952 P.2d 590 (1997))); *Cockle*, 142 Wn.2d at 811 ("[A]n injured worker should be compensated based . . . on his or her actual 'lost earning capacity.' " (quoting *Double D Hop Ranch*, 133 Wn.2d at 798)); *Dep't of Labor & Indus. v. Avundes*, 140 Wn.2d 282, 289-90, 996 P.2d 593 (2000) ("[T]he proper analytical focus is on lost earning capacity."). We have also found that "the Industrial Insurance Act is a self-contained system that provides specific procedures and remedies for injured workers." *Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 668, 989 P.2d 1111 (1999). The act itself states that its provisions may not be modified by an employment contract. RCW 51.04.060. Therefore, we look to the act and its purpose in order to construe Granger's earning capacity at the time of his injury, and not to the rules of the union's trust fund and its conditions for benefit eligibility. Because we are to construe the provisions of Title 51 RCW liberally in favor of

the worker, *see* RCW 51.12.010, we find that Granger was earning the $2.15 per hour for health care at the time of his injury and thus this constitutes part of his earning capacity.[2]

¶18  The Department argues that we should defer to its administrative rule at WAC 296-14-526, which interprets RCW 51.08.178 to require eligibility for the benefit in order to include its value in the wage computation. Br. of Appellant at 23. WAC 296-14-526 states that "[t]he value of other consideration of like nature is only included in the worker's monthly wage if: . . . (i) [t]he employer made payments to a union trust fund or other entity for the identified benefit; *and* (ii) [t]he worker was actually eligible to receive the benefit." (Emphasis added.) The Department admits that the rule does not have the force of law but argues that we should give deference to its interpretation of Title 51 RCW because it is the agency charged with administering the

---

[2] The Department argues that such a construction creates a "[d]ouble-counting [a]nomaly"—because the hour bank constitutes employer-provided "wages" as a disabled worker draws hours *out of* this account during disability periods (i.e., 120 hours per month for the next month's coverage), we should not also count hourly contributions as wages when the employer pays *into* the hour bank. Suppl. Br. of Pet'r at 14-15; *see also Gallo*, 155 Wn.2d at 495 (explaining that benefits are considered employer-provided wages when the employee uses them during a disability period). The Department states that this is not a double-*recovery* concern but rather that the argument addresses "abstract accounting logic." Suppl. Br. of Pet'r at 15 n.8. However, the double counting argument has no practical application to the issue because of the double recovery prohibition. *See Gallo*, 155 Wn.2d at 494 (" 'When an injured worker retains his or her health insurance, he or she retains that part of his or her earning capacity, and his or her time-loss compensation should be computed accordingly.' " (quoting *Cockle*, 142 Wn.2d at 814-15)). Therefore, "abstract accounting logic," without any practical application, does not persuade us to construe the statute in a way that defeats the statutory mandate to resolve doubts in favor of the worker. *See* RCW 51.12.010.

The Department also argues that because of the 1,080-hour cap on hours in the hour bank, once an employee reaches that cap, the employer's contributions to the fund "count for nothing for that individual employee until he draws down to a level below the 1080-hour cap" and, therefore, a "worker who is injured while at the cap . . . would not have any value included for health benefits in his wage computation" if we follow the courts below. Suppl. Br. of Pet'r at 16-17. However, as discussed above, *Gallo* established that if the employee is entitled to the *benefits* during his disability period (as a person would be if he or she had accumulated 1,080 hours), he may not also receive the *value* of the employer's contributions in his time-loss compensation. This is a principle affecting *all* employees—not, as the Department states, an "anomaly" affecting only those at the hour bank cap.

Industrial Insurance Act. Br. of Appellant at 24-25; Suppl. Br. of Pet'r at 6 n.2.

¶19 The Department contends that its interpretation of RCW 51.08.178, as expressed in WAC 296-14-526, makes more sense because it treats all classes of employees the same, be they union, nonunion, probationary, seasonal, etc. *See* Pet. for Review at 16-17; Suppl. Br. of Pet'r at 17-18. In conditioning the receipt of the value of the trust payment on eligibility for the benefits, the Department argues, its interpretation does not favor employees who use an hour bank over other classes of employees who have a probationary period before eligibility for health care begins. *See* Pet. for Review at 17; Suppl. Br. of Pet'r at 18. Granger responds that this is a policy issue that should be resolved by the legislature and that this potential disparity has no bearing on the interpretation of "wages" in RCW 51.08.178. *See* Answer to Pet. for Review at 17. We agree.

¶20 Substantial weight is given to an agency's interpretation of the law. *Flanigan v. Dep't of Labor & Indus.*, 65 Wn. App. 119, 121, 827 P.2d 1082 (1992), *aff'd*, 123 Wn.2d 418, 869 P.2d 14 (1994). However, an agency's interpretation is not binding on us, and deference to an agency is inappropriate where the agency's interpretation conflicts with a statutory mandate. *Cockle*, 142 Wn.2d at 812. "[R]ules that are inconsistent with the statutes they implement are invalid." *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 715, 153 P.3d 846 (2007).

¶21 In *Cockle*, we rejected the Department's interpretation of RCW 51.08.178 as excluding employer-provided benefits because we found that its construction of the statute could not "be reconciled with the Legislature's *statutory* mandate that all Title 51 RCW provisions 'shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries . . . occurring in the course of employment.'" *Cockle*, 142 Wn.2d at 812 (quoting RCW 51.12.010). Similarly, the Department's construction of RCW 51.08.178 here does not liberally construe the statute to reduce injured

workers' economic loss to a minimum and thus does not comport with the statutory mandate. Therefore, we do not defer to its interpretation.[3] Moreover, we find WAC 296-14- -526 invalid insofar as it conflicts with our interpretation of RCW 51.08.178.

¶22 The Department argues that its construction of RCW 51.08.178's "receiving at the time of the injury" requirement helps achieve "sure and certain" relief, a goal of RCW 51.04.010. Suppl. Br. of Pet'r at 19. It argues that "[i]t is necessary to set a point at which the rights and responsibilities of individuals become fixed in order to bring certainty to wage computation." *Id.* at 19-20. Although this is true, the Department fails to demonstrate how this principle will be defeated by our decision that "receiving at the time of the injury" refers to whether the employer was making the health care payments into the trust and that this is the point at which the rights and responsibilities of the employee become fixed.[4]

¶23 Finally, the Department argues that where a worker has not actually lost wages due to an injury, there can be no wage loss replacement under Title 51 RCW. Pet. for Review at 18. The Department cites *South Bend School District No.*

---

[3] We also note that the Department promulgated WAC 296-14-526 while Granger was in the course of litigating his case. Granger filed his notice of appeal with the Board on August 14, 2002, and the Board granted review on September 16, 2002. The Board finally issued its decision on January 14, 2004. WAC 296-14-526 was filed on May 15, 2003, and became effective on June 15, 2003. The Department states that it promulgated this rule in response to *Cockle* (decided January 18, 2001), but we are mindful of the fact that the regulation purported to interpret—in the Department's favor—a statute whose meaning it was currently litigating.

[4] The Department argues that this construction of wages will harm injured workers who seek temporary partial disability benefits. *See* Suppl. Br. of Pet'r at 18-19. Temporary partial disability benefits are based upon the difference between the wages the worker was earning at the time of the injury and the worker's wages when he or she returns to work. *See* RCW 51.32.090(3). Therefore, the Department argues, a worker who returns to work and is not yet entitled to health care benefits, but who must have the employer's payment for those benefits included as part of his or her "current wages," will not be entitled to as a great a disability payment as he or she would be under the Department's interpretation of RCW 51.08.178. Suppl. Br. of Pet'r at 19. The Department fails to establish the extent or severity of the harm that would ensue, and thus this argument is not persuasive.

*118 v. White*, 106 Wn. App. 309, 316, 23 P.3d 546 (2001), where the Court of Appeals stated that the " 'purpose of temporary disability compensation is to replace the money a worker loses by reason of temporary inability to work' " and that " 'where a worker receives his normal salary from his employer in spite of his inability to work, he has not lost anything financially and there is nothing to replace' " (quoting *In re Serviss*, No. 57,651 (Claim No. G-709237), Bd. of Indus. Ins. Appeals (Wash. Dec. 3, 1981) (Phillip T. Bork, dissenting)). The Department argues that here, because the trust payments had no actual or practical value to Granger, he did not suffer a financial loss concerning health care benefits when he was injured, and thus there was nothing for which Granger could be compensated. Pet. for Review at 19-20.

¶24 The Department is again improperly focusing on the coverage itself. Eligibility for benefits depended upon banking hours, and when he became injured, Granger lost the ability to bank those hours; therefore, the hourly payment by his employer did have value to him. Additionally, the Department's reliance on *South Bend* ignores the numerous decisions of this court in which we have found that the proper focus is on lost *earning* capacity. *See, e.g., Avundes*, 140 Wn.2d at 289-90. We find that here, Granger lost the capacity to earn the health care payments and thus this should be reflected in his time-loss compensation.

¶25 <u>Attorney Fees</u>. RCW 51.52.130 provides for an award of attorney fees where the Department appeals but the worker's right to relief is sustained. Because Granger prevails here, we find that he is entitled to attorney fees.

III

Conclusion

¶26 We affirm the Court of Appeals. We find that the proper focus under RCW 51.08.178's "receiving at the time of injury" language is on the payment made for the benefit

and not on eligibility for coverage itself. To the extent that WAC 296-14-526 conflicts with this interpretation, we find that rule invalid. Because he has prevailed here, Granger is entitled to reasonable attorney fees.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.