[No. 40159-2-II.   Division Two.   September 7, 2011.]

ALICIA L. GREEN, *Respondent*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*.

*Robert M. McKenna, Attorney General*, and *Joseph Christy Jr., Assistant*, for appellant.

*Gregory D. Provenzano* and *Amy L. Crewdson* (of *Columbia Legal Services*), for respondent.

¶1 PENOYAR, C.J. — This case involves the amount of the monthly "Basic Food" allotment that Alicia L. Green and others similarly situated were entitled to during a 15-month period from March 2007 to June 2008. Green claims certain income deductions that would have increased the amount of her monthly Basic Food allotment during this period. She filed an administrative challenge, arguing that the Department of Social and Health Services (Department) should have applied the earned income deductions in former WAC 388-450-0175 (Wash. St. Reg. 06-07-078 (May 1, 2006)), in addition to the income deductions in former WAC 388-450-0185 (Wash. St. Reg. 07-22-035 (Nov. 30, 2007)), to her income when calculating her monthly Basic Food allotment.

¶2 An administrative law judge (ALJ) rejected her challenge, but the superior court reversed the ALJ's final order and entered orders (1) allowing Green's administrative challenge to proceed as a class action, (2) concluding that

the Department should have applied the deductions in former WAC 388-450-0175 (2006)[1] to class members' income when calculating their monthly Basic Food allotments during the period from March 2007 to June 2008, and (3) awarding attorney fees to Green. The Department appeals these orders.

¶3 We reverse the superior court's orders, holding that because the scope of former WAC 388-450-0175 (2006) was ambiguous, the Department's interpretation of its own regulation was entitled to deference. Accordingly, we reinstate the ALJ's final order.

## FACTS

¶4 During the period relevant to this appeal, Green, a disabled woman, received monthly benefits from two public assistance programs, Basic Food and "General Assistance Unemployable" (GA-U). Basic Food is a nutrition program to help low-income individuals and families buy food. Former WAC 388-400-0040 (Wash. St. Reg. 06-13-043 (July 17, 2006)).[2] GA-U, now called disability lifeline, is a state-funded program that provides cash and medical benefits to physically and/or mentally incapacitated individuals who are unemployable for 90 days from the date of application. *See* WAC 388-400-0025(1); former WAC 388-400-0025 (Wash. St. Reg. 06-13-043 (July 17, 2006)); WAC 388-448--0001; *see also Disability Lifeline,* WASH. DEP'T OF SOC. & HEALTH SERVS., http://www.dshs.wa.gov/onlinecso/gau.shtml (last visited Aug. 12, 2011).

¶5 The Department administers Basic Food under the federal Supplemental Nutrition Assistance Program (SNAP),

---

[1] Because we cite to more than one former version of WAC 388-450-0175, we always include the effective date of the relevant version in parentheses.

[2] Where relevant, we cite to the version of statutes and regulations that were in effect during June 2008, the month when the Department determined the benefits that Green originally challenged in her July 17 request for an administrative hearing. Otherwise, for ease of future reference, we cite to the current version of statutes and regulations.

formerly known as the food stamp program, and related federal regulations. *See generally* 7 U.S.C. §§ 2011-2036;[3] former RCW 74.04.050 (1981); RCW 74.04.500; former WAC 388-400-0040(2). The federal government provides the food benefits, and up to 50 percent of the administrative costs, of the federally funded portion of the state's Basic Food program. *See, e.g.*, 7 U.S.C. § 2025(a). The Food and Nutrition Service (FNS) of the United States Department of Agriculture administers SNAP.

¶6 The legislature has authorized the Department "to establish a food stamp or benefit program under the federal food stamp act of 1977, as amended." RCW 74.04.500. The Department must "adopt rules conforming to federal laws, rules, and regulations required to be observed in maintaining the eligibility of the state to receive from the federal government and to issue or distribute . . . food stamps." RCW 74.04.510. The legislature has assented to all "present provisions of the federal law under which federal grants or funds . . . are extended to the state for the support of programs administered by the department, and to such additional legislation as may subsequently be enacted . . . authorizing public welfare and assistance activities." Former RCW 74.04.050. Additionally, the legislature has stated, "Any section or provision of [Title 74 RCW—Public Assistance] which may be susceptible to more than one construction shall be interpreted in favor of the construction most likely to satisfy federal laws entitling this state to receive federal matching or other funds for the various programs of public assistance." Former RCW 74.04.055 (1991).

¶7 By federal regulation, a household's monthly food assistance allotment under SNAP is "equal to the maximum food stamp allotment for the household's size reduced

---

[3] For ease of future reference, we cite to the current version of statutes in 7 U.S.C. §§ 2011-2036. Effective October 1, 2008, Congress amended some of these statutes in a manner that does not affect our analysis. *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001-4407, 122 Stat. 1651, 1853-1903.

by 30 percent of the household's net monthly income." 7 C.F.R. § 273.10(e)(2)(ii)(A);[4] *see also* 7 U.S.C. § 2017(a). To calculate the household's net monthly income, a state agency must first calculate the household's total gross monthly income, which includes both earned and unearned income. 7 C.F.R. § 273.10(e)(1)(i)(A). Federal regulations categorically exclude certain types of income from the gross income calculation and state that apart from these exceptions, "no other income shall be excluded." 7 C.F.R. § 273.9(c).

¶8 After a state agency determines a household's total gross monthly income, the agency then subtracts a standard deduction, 20 percent of the household's "monthly earned income," and any other applicable deductions for medical care, child care, child support, or shelter expenses. 7 C.F.R. § 273.10(e)(1)(i)(B)-(I); *accord* 7 U.S.C. § 2014(e)(1)-(6). Another subsection of the federal regulations describes each of these deductions in greater detail after stating, "Deductions shall be allowed only for the following household expenses." 7 C.F.R. § 273.9(d); *accord* 7 C.F.R. § 273.10(d) ("Deductible expenses include only certain dependent care, shelter, medical and . . . child support costs as described in § 273.9."). The applicable federal regulation defines the "earned income deduction" as "[t]wenty percent of gross earned income as defined in paragraph (b)(1) of this section." 7 C.F.R. § 273.9(d)(2); *see also* 7 C.F.R. § 273.9(b)(1) (defining "earned income").

¶9 During the period relevant to this appeal, the Department's regulations stated, "To be eligible for Basic Food benefits, your AU[5] must meet the eligibility requirements

---

[4] For ease of reference, we cite to the current version of 7 C.F.R. § 273.10. Last year, the FNS amended this subsection in a manner that does not affect our analysis. *See* Food Stamp Program: Eligibility and Certification Provisions of the Farm Security and Rural Investment Act of 2002, 75 Fed. Reg. 4,912, 4,950-51 (Jan. 29, 2010).

[5] "AU" means "assistance unit." An "assistance unit" is "the group of people who live together and whose income or resources we count to decide your eligibility for benefits and the amount of benefits you get." WAC 388-408-0005(1)(c).

of the most current version of the Food Stamp Act of 1977." Former WAC 388-400-0040(2). Additionally, an individual was eligible for Basic Food benefits only if the individual's AU had "countable income at or below gross and net income standards as described under WAC 388-478-0060." Former WAC 388-400-0040(6)(a).

¶10 In June 2008, the Department informed Green that her monthly Basic Food allotment for May and June 2008 was $10.00. During each of these two months, Green earned $591.88 in wages (earned income) and received $203.93 in GA-U benefits (unearned income); accordingly, she had a gross monthly household income of $795.81. When the Department calculated Green's countable income for May and June 2008, the Department applied the deductions in former WAC 388-450-0185 but not the deductions in former WAC 388-450-0175 (2006).

¶11 Former WAC 388-450-0175 (2006), which was in effect from May 1, 2006 to July 1, 2008, read in its entirety:

**WAC 388-450-0175 Does the department offer an income deduction as an incentive for GA-U clients to work?** The department gives special deductions to people who receive income from work while receiving General Assistance-Unemployable (GA-U). We allow the following deductions before using your earnings to determine your eligibility and monthly benefits:

(1) We subtract eighty-five dollars plus one half of the remainder of your monthly gross earned income as an incentive to employment.

(2) We also subtract an amount equal to twenty percent of your gross earned income to allow for work expenses.

Unlike the previous version of this regulation, which was in effect from September 1, 1998, to May 1, 2006, former WAC 388-450-0175 (2006) did not explicitly state whether the regulation's earned income deductions applied only to countable income calculations for GA-U benefits. *See* former WAC 388-450-0175 (Wash. St. Reg. 98-16-044 (Sept. 1,

1998)) (stating, "This section applies to the GA-U cash assistance program."). Effective July 1, 2008, the Department amended WAC 388-450-0175 and related regulations to clarify that WAC 388-450-0175's earned income deductions apply only to the calculation of an individual's countable income for GA-U cash benefits, not to countable income calculations for Basic Food or other public assistance benefits. *See* Wash. St. Reg. 08-12-031 (July 1, 2008); *see also* Wash. St. Reg. 09-18-079 (Oct. 1, 2009); *accord* former WAC 388-450-0162 (Wash. St. Reg. 08-15-009 (Aug. 3, 2008)).

¶12 As we noted above, the Department applied the deductions in former WAC 388-450-0185 to determine Green's countable income for her Basic Food allotment. That regulation, which was in effect from November 30, 2007, to December 26, 2008, read in relevant part:

**WAC 388-450-0185 Does the department count all of my income to determine my eligibility and benefits for Basic Food?** We subtract the following amounts from your assistance unit's (AU's) countable income before we determine your Basic Food benefit amount:

(1) A standard deduction based on the number of people in your AU under WAC 388-408-0035[;]

. . . .

(2) Twenty percent of your AU's gross earned income (earned income deduction).[6]

Former WAC 388-450-0185.

I. Administrative Hearing and Order

¶13 On July 17, Green requested an administrative hearing to challenge her $10.00 monthly Basic Food allotment. She argued that the Department had overstated her countable income—and therefore had miscalculated her monthly Basic Food allotment—by failing to apply the

---

[6] Subsection (3) through (6) of former WAC 388-450-0185, which require the Department to deduct certain expenses for child care, medical care, child support, and shelter, are not involved in this appeal.

earned income deductions in former WAC 388-450-0175 (2006) to her income. Accordingly, she requested "all food benefits that were underpaid during any of the previous twelve months."[7] Administrative Record (AR) at 197.

¶14 The parties stipulated that the Department had correctly applied the deductions in former WAC 388-450--0185 to Green's income when it calculated her May and June 2008 allotments. Specifically, the Department subtracted a standard deduction of $134.00 and an earned income deduction of $118.37 (20 percent of her earned income). The parties also stipulated that had the Department applied the earned income deductions in former WAC 388-450-0175 (2006) to her income, Green would have received an additional $76.00 in monthly Basic Food benefits for each of the months of April, May, and June 2008, and an additional $126.00 in monthly Basic Food benefits for March 2008.

¶15 At the January 6, 2009 administrative hearing, a food assistance analyst for the Department testified that the Department had never applied the earned income deductions in former WAC 388-450-0175 (2006) to an individual's income to determine the individual's countable income for Basic Food benefits. The analyst testified that the Department deleted the sentence "[T]his section applies to the GA-U cash assistance program" from former WAC

---

[7] Two months earlier, on April 7, 2008, Columbia Legal Services (CLS) raised an identical argument in a petition for judicial review and declaratory judgment that it filed in Thurston County Superior Court on behalf of another client. CLS filed the petition after an ALJ had issued a final order in a separate administrative proceeding, stating that the earned income deductions in former WAC 388-450--175 (2006) applied to the calculation of an individual's countable income for Basic Food benefit purposes. CLS's petition sought to certify a class of similarly situated individuals. Green joined the petition by stipulation in May 2008.

The trial court dismissed CLS's petition because neither the original petitioner nor Green had exhausted administrative remedies under RCW 74.08.080, which requires an aggrieved public assistance recipient to apply for an adjudicative proceeding within 90 days of receiving notice of the relevant decision. See RCW 74.08.080(1)(a), (2)(a). Therefore, the superior court concluded that it lacked appellate subject matter jurisdiction under the Administrative Procedure Act, ch. 34.05 RCW.

388-450-0175 (1998) in order to correct a perceived redundancy, not to effectuate a policy change. *See* Report of Proceedings (Jan. 6, 2009) at 14.

¶16 On February 27, the ALJ entered a final order rejecting Green's challenge. The ALJ concluded that the earned income deductions in former WAC 388-450-0175 (2006) did not apply to the calculation of an individual's monthly Basic Food allotment.

¶17 The ALJ entered findings of fact and conclusions of law to support her final order. The ALJ concluded that "Basic Food . . . is a federally funded program governed by the Food Stamp Act of 1977 and its subsequent amendments." AR at 4. The ALJ observed that the legislature had enacted statutes, including RCW 74.04.510, expressing a "clear intent" to comply with the federal Food Stamp Act. AR at 5. The ALJ also cited the "Food Stamp Program Federal/State Agreement" that the federal government and the State of Washington had entered into in 1981, which reads in relevant part:

> The State of Washington and the Food and Nutrition Service (FNS), U.S. Department of Agriculture (USDA), hereby agree to act in accordance with the provisions of the Food Stamp Act of 1977, as amended, implementing regulations, the FNS-approved State Plan of Operation and FNS-approved manuals. The State and FNS (USDA) further agree to fully comply with any changes in federal law and regulations.
>
> . . . .
>
> The State agrees to:
>
> 1. Administer the program in accordance with the provisions contained in the Food Stamp Act of 1977, as amended, and in the manner prescribed by regulations issued pursuant to the Act; and to implement FNS-approved State Plan of Operation and to adhere to the FNS-approved State manuals, State instructions, or State directives.

AR at 717.

¶18 Additionally, the ALJ's conclusions included an extensive review of the regulations governing Basic Food

eligibility, income determination, and monthly-allotment calculation. Most relevant for purposes of this appeal, the ALJ discussed former WAC 388-450-0162 (Wash. St. Reg. 99-24-008 (Jan. 1, 2000)),[8] former WAC 388-450-0175 (2006), and former WAC 388-450-0185.

¶19 The ALJ described former WAC 388-450-0162 as a "compressed regulation with provisions applicable to both cash and food assistance" that provided guidelines for determining an applicant's "countable net income." AR at 7. That regulation stated in relevant part:

> **WAC 388-450-0162 The department uses countable income to determine if you are eligible and the amount of your cash and food assistance benefits . . . .**
>
> (1) Countable income is all income that remains after we subtract the following:
>
> . . . .
>
> *(b) Deductions or earned income incentives under WAC 388-450-0170 through 388-450-0200.*

Former WAC 388-450-0162 (emphasis added). The ALJ observed that each of the WAC sections that former WAC 388-450-0162(1)(b) cross-referenced "only appli[ed] to certain programs." AR at 7. The ALJ noted, "WAC 388-450--0170 explicitly applies to TANF and SFA only; WAC 388-450-0185 through -200 explicitly apply to FA only."[9]

¶20 Next, the ALJ analyzed former WAC 388-450-0175 (2006):

> This rule does not explicitly state that the deduction is applicable to the calculation of GA-U cash benefits only. However, a reasonable inference can be made that it is so limited in

___

[8] Earlier in our opinion, we cited a former version of WAC 388-450-0162 with an effective date of August 3, 2008. For purposes of clarity, we note that all other references and citations to "former WAC 388-450-0162" in this opinion refer to the version of that regulation with an effective date of January 1, 2000.

[9] "TANF" refers to "temporary assistance for needy families," "SFA" refers to "state family assistance," and "FA" appears to refer to "food assistance," or the Basic Food program. *See* WAC 388-400-0005, -0010.

light of the stated purpose of the May 2006 amendment and the absence of any indication of an intent to apply its provision to the [Basic Food] program; its title; and its inclusion in a list with other regulations of program-specific application.

AR at 8. Additionally, the ALJ observed that SNAP regulations "list the same deductions" as former WAC 388-450--0185 and "clearly state that these are the only deductions allowed." AR at 7 (citing 7 C.F.R §§ 273.9(d), 273.10(d), (e)). The ALJ stated that in contrast, the same federal regulations did not allow the earned income deductions that appeared in former WAC 388-450-0175 (2006).

II. JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT (APA), CH. 34.05 RCW

¶21 On March 25, 2009, Green timely filed a petition for review and declaratory judgment in Thurston County Superior Court under RCW 74.08.080. She originally asserted that the ALJ's final order violated three subsections of the APA provision that governs review of an agency order in adjudicative proceedings.[10] *See* RCW 34.05.570(3). In her opening trial brief, however, Green limited her argument to a challenge under a single subsection, RCW 34.05.570(3)(d), arguing that the Department had "erroneously interpreted or applied the law." Clerk's Papers (CP) at 118.

¶22 Substantively, Green asked the superior court to (1) declare that the Department was required to apply the earned income deductions in former WAC 388-450-0175 (2006) to determine an individual's countable income when the Department calculated monthly Basic Food allotments for all individuals, like her, who had earned income while receiving both Basic Food and GA-U benefits; (2) certify her challenge as a class action under CR 23(a) and CR 23(b)(2); (3) declare that class members were entitled to underpaid

---

[10] Green's petition alleged that the Department "(1) erroneously interpreted or applied the law; (2) acted inconsistent with the rules of the agency; and/or (3) made orders that were arbitrary or capricious." Clerk's Papers at 6; *see also* RCW 34.05.570(3)(d), (h)-(i).

or wrongly withheld Basic Food benefits from March 26, 2007, to June 30, 2008, and (4) award costs and reasonable attorney fees. Green later filed a separate motion for class certification.

¶23 On June 18, the superior court found that Green's petition met the requirements of CR 23(a) and CR 23(b)(2) and, therefore, it entered an "order allowing matter to proceed as class action." CP at 107. We denied the Department's motion for discretionary review seeking to overturn the class certification order. *See Green v. Dep't of Soc. & Health Servs.*, No. 39579-7-II (Wash. Ct. App. Sept. 29, 2009).

¶24 On December 4, the superior court entered findings of fact, conclusions of law, and a declaratory judgment order. The superior court reversed the ALJ's final order, concluding that the Department had erroneously interpreted and applied the law when it failed to apply the earned income deductions in former WAC 388-450-0175 (2006) to class members' income when calculating their Basic Food allotments from March 26, 2007, to June 30, 2008. In an amended order, the superior court awarded attorney fees to Green under RCW 74.08.080.

¶25 The Department appeals the superior court's declaratory judgment order, its order allowing the matter to proceed as class action, and its amended order awarding attorney fees.

## ANALYSIS

### Former WAC 388-450-0175 (2006)

¶26 Green asks us to reverse the ALJ's final order and declare that the Department and ALJ erroneously interpreted or applied former WAC 388-450-0175 (2006). Specifically, she argues that the plain language of former WAC 388-450-0175 (2006) and related regulations unambiguously required the Department to apply the earned income deductions in former WAC 388-450-0175 (2006) to her and

other class members' incomes in order to calculate their monthly Basic Food allotments. The Department responds, in relevant part,[11] that the ALJ correctly interpreted the law because federal and state law prohibit it from applying former WAC 388-450-0175 (2006) as Green requests. Because former WAC 388-450-0175 (2006) was ambiguous, we defer to the Department's interpretation of the regulation.

A. Standard of Review

■ ■ ¶27 The APA governs adjudicative proceedings involving a public assistance recipient who is aggrieved by the Department's decision. RCW 74.08.080(1), (2). When reviewing administrative action, we sit in the same position as the superior court and apply the APA standards directly to the record before the agency. *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Green raises an APA challenge under RCW 34.05.570(3)(d), arguing that the ALJ and the Department erroneously interpreted or applied the law. As the party challenging the agency's order, Green bears the burden of demonstrating the order's invalidity. *See* RCW 34.05.570(1)(a); *see also* RCW 34.05.010(3).

■ ■ ¶28 In the instant case, the validity of the ALJ's final order turns on the proper interpretation of the Department's regulations, primarily former WAC 388-450-0175 (2006). Our "paramount concern" in interpreting an agency regulation is "to ensure that the regulation is interpreted in a manner that is consistent with the underlying policy of the statute." *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010). " 'A term in a regulation should not be read in isolation but rather within the context of the regulatory and statutory scheme as a whole.' " *Overlake Hosp. Ass'n*, 170 Wn.2d at 52 (quoting *City of Seattle v. Allison*, 148 Wn.2d 75, 81, 59 P.3d 85 (2002)).

---

[11] Because Green challenged the ALJ's final order as an erroneous interpretation or application of the law under RCW 34.05.570(3)(d), we do not consider the Department's argument that it had a rational basis for its actions under RCW 34.05.570(3)(h).

¶29 Under RCW 34.05.570(3)(d), the APA's "error of law" standard, we may substitute our interpretation of the law for the agency's. *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000). If a regulation's meaning is plain and unambiguous on its face, we give effect to that plain meaning. *Overlake Hosp. Ass'n*, 170 Wn.2d at 52. An ambiguity exists, however, if there is " 'more than one reasonable interpretation' " of the regulation. *Overlake Hosp. Ass'n*, 170 Wn.2d at 52 (quoting *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs.*, 168 Wn.2d 421, 433, 228 P.3d 1260 (2010)).

¶30 We accord "great deference" to an agency's interpretation of an ambiguous regulation that it administers because "the agency has expertise and insight gained from administering the regulation that the reviewing court does not possess." *Overlake Hosp. Ass'n*, 170 Wn.2d at 56; *see also Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). But we do not defer to an agency's interpretation of its regulation where the agency's interpretation conflicts with a statutory mandate. *Dep't of Labor & Indus. v. Granger*, 159 Wn.2d 752, 764, 153 P.3d 839 (2007). A regulation that is inconsistent with the statute that it implements is invalid. *Granger*, 159 Wn.2d at 764.

B. Analysis

¶31 Former WAC 388-450-0175 (2006), the primary regulation at issue in this appeal, stated, "The department gives special deductions to people who receive income from work while receiving General Assistance-Unemployable (GA-U)." For these individuals, the regulation directed the Department to deduct the following from the GA-U client's gross income: (1) $85.00, (2) one-half of the individual's remaining monthly gross earned income, and (3) 20 percent of the individual's gross earned income for work expenses. Former WAC 388-450-0175 (2006). The regulation required the Department to deduct these amounts before determining the individual's eligibility and monthly benefits. Former WAC 388-450-0175 (2006).

¶32 Former WAC 388-450-0175 (2006) was ambiguous because its scope was unclear. It could have meant, as the Department contends, that when a GA-U client received income from work, the Department had to apply the deductions in former WAC 388-450-0175 (2006) to a client's gross income when determining only the client's GA-U eligibility and monthly benefits. *See* Appellant's Br. at 8-9 ("At all times prior and subsequent to the amendment, the Department has consistently interpreted WAC 388-450-0175 to apply exclusively to the General Assistance Program."). Alternatively, the regulation could have applied more broadly, as Green contends. Thus, it could have required the Department to apply its deductions to a GA-U client's gross income when determining the client's eligibility and monthly benefits for GA-U *and* other public assistance programs that the Department administered, like Basic Food.

¶33 Contrary to Green's assertions, the language of former WAC 388-450-0162 did not clarify the scope of former WAC 388-450-0175 (2006). Former WAC 388-450--0162(1)(b) stated, in relevant part, "The department uses countable income to determine if [you are] eligible *and the amount of [your] cash and food . . . benefits. . . .* Countable income is all income that remains after we subtract . . . *(b) Deductions or earned income incentives under WAC 388-450-0170 through 388-450-0200.*" (Emphasis added.) Green argues, based on the italicized language, that "[former] WAC 388-450-0162 stated unequivocally that it governed both cash and food assistance benefits. It also contained a specific range of rules governing deductions and earned income incentives. The second regulation, former WAC 388-450-0175 [(2006)] fell within this range of rules." Resp't's Br. at 11-12.

¶34 But as the ALJ correctly noted in her final order, several of the individual sections within the range of rules in former WAC 388-450-0162(1)(b) applied only to designated public assistance programs. For example, WAC 388-

-450-0170 applied to "TANF/SFA, RCA,[12] and medical programs for children, pregnant women, and families," and former WAC 388-450-0190 (Wash. St. Reg. 07-22-035 (Nov. 30, 2007)) addressed only the "shelter cost income deduction for Basic Food." Thus, although former WAC 388-450--0162(1)(b) clearly stated that the Department had to apply certain deductions when calculating an individual's countable income for food benefits, one had to read the individual section to discern whether the specific deductions in that section applied to the countable income determination for a particular public-assistance program. And, as we discussed above, it is unclear whether the deductions in former WAC 388-450-0175 (2006) applied only to the calculation of GA-U benefits or, alternatively, to the calculation of monthly benefits for GA-U and other public assistance programs.

¶35 Because former WAC 388-450-0162 and former WAC 388-450-0175 (2006) were both ambiguous as to whether the earned income deductions in former WAC 388-450-0175 (2006) applied to Basic Food benefit calculations, we must give "great deference" to the Department's interpretation of its own regulation. *See Overlake Hosp. Ass'n*, 170 Wn.2d at 56. Here, as the ALJ observed in her final order, federal regulations establish both the amount of an individual's monthly SNAP allotment and the deductions that a state agency may apply to an individual's gross income in order to calculate the individual's countable income for allotment purposes. 7 C.F.R. §§ 273.9(d), .10(d), (e)(2)(ii)(A). Significantly, these federal regulations use mandatory rather than permissive language:

> Deductions *shall* be allowed only for the following household expenses.
>
> Deductible expenses include *only* certain dependent care, shelter, medical and ... child support costs as described in § 273.9.
>
> [T]he household's monthly allotment *shall* be equal to the maximum food stamp allotment for the household's size reduced by 30 percent of the household's net monthly income.

---

[12] "RCA" is refugee cash assistance. *See* WAC 388-400-0030.

7 C.F.R. § 273.9(d) (emphasis added); 7 C.F.R. § 273.10(d) (emphasis added); 7 C.F.R. 273.10(e)(2)(ii)(A) (emphasis added). Additionally, a federal regulation explicitly limits the "[e]arned income deduction" to "[t]wenty percent of gross earned income." 7 C.F.R. § 273.9(d)(2).

¶36 Here, the deductions that the Department applied when calculating Green's Basic Food allotments—i.e., the deductions listed in former WAC 388-450-0185—exactly parallel the federal regulations. Thus, former WAC 388-450--0185 authorized a standard deduction; a 20 percent earned-income deduction; and applicable deductions for medical care, child care, child support, and shelter expenses. *Compare* former WAC 388-450-0185(1)-(6), *with* 7 C.F.R. § 273.10(e)(1)(i)(B)-(I). In contrast, the federal regulations do not authorize the $85 deduction and earned income deductions that appear in former WAC 388-450--0175 (2006). Applying the earned income deductions in former WAC 388-450-0175 (2006) to an individual's income when determining the individual's Basic Food allotment would have resulted in an earned income deduction that was significantly larger than the 20 percent earned income deduction that 7 C.F.R. § 273.9(d)(2) authorizes.

¶37 Additionally, our legislature has enacted specific statutes ordering the Department to adopt regulations that are consistent with federal law in this area. *See* former RCW 74.04.050; former RCW 74.04.055; RCW 74.04.510. Accepting Green's interpretation of former WAC 388-450--0175 (2006) would undermine the legislature's mandate to establish a food stamp program with "rules conforming to federal laws." RCW 74.04.510.

¶38 Recognizing the ambiguous scope of former WAC 388-450-0175 (2006), we believe that it is reasonable to conclude that its intent, consistent with the underlying policy of these statutes, was to limit the deductions in former WAC 388-450-0175 (2006) to apply only to eligibility and benefits for the GA-U program. Because the Department's interpretation of former WAC 388-450-0175 (2006)

is reasonable within the overall context of the federal and state statutes and regulations that govern food assistance benefits, we defer to its interpretation. Accordingly, we reverse the superior court's declaratory judgment order and reinstate the ALJ's final order.[13] Additionally, because we reject Green's argument on the merits, we reverse the superior court's order allowing the matter to proceed as a class action.

¶39 Furthermore, we reverse the superior court's amended order awarding reasonable attorney fees. RCW 74.08.080(3) reads in relevant part, "In the event that the superior court, the court of appeals, or the supreme court renders a decision in favor of the appellant, said appellant shall be entitled to reasonable attorneys' fees and costs." Because Green does not prevail before us and should not have prevailed before the superior court, she is not entitled to attorney fees under RCW 74.08.080(3). Additionally, we deny Green's request for fees on appeal under RAP 18.1.

HUNT and JOHANSON, JJ., concur.

---

[13] Green assigns error to the ALJ's findings and conclusions related to the testimony by the Department's food assistance analyst at the administrative hearing. Because this testimony has no impact on our analysis, we do not address these assignments of error.