# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JUNE 2, 2022

_Gonzélez, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JUNE 2, 2022

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Dependency of: | ) | No. 100008-1 |
| | ) | |
| N.G. | ) | En Banc |
| | ) | |
| | ) | Filed: June 2, 2022 |
| | ) | |

OWENS, J. — An appellate court may accept interlocutory review of a lower

court order if the decision "substantially alters the status quo or substantially limits the

freedom of a party to act." RAP 2.3(b)(2); RAP 13.5(b)(2). This case asks us to

clarify what "substantially alters the status quo" entails. Because court commissioners

often decide whether to accept review in unpublished orders, there is little guidance

on how to interpret RAP 2.3(b)(2) and RAP 13.5(b)(2). One of the few cases that has

discussed this issue, *State v. Howland*, 180 Wn. App. 196, 207, 321 P.3d 303 (2014),

held discretionary review is available under RAP 2.3(b)(2) if the decision has "an

immediate effect outside the courtroom" and does not merely "alter[] the status of the

litigation itself."

Because the *Howland* standard comports with the Rules of Appellate Procedure

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(RAPs) as a whole, scholarly articles, and this court's tendency to disfavor interlocutory review, the court adopts *Howland*'s interpretation. Applying *Howland* to the case before us, the Court of Appeals correctly denied the mother's motion for discretionary review. Although the trial court committed probable error when it failed to articulate why it allowed permissive intervention under CR 24(b)(2), the intervention of the dependent child's former stepfather did not have an immediate effect outside the courtroom. Consequently, the Court of Appeals did not commit probable error in denying discretionary review. Accordingly, we affirm the Court of Appeals and remand the case to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

N.G., the child who is the subject of this dependency proceeding, was born to his mother, M.S., in 2011. N.G.'s father has no meaningful relationship with N.G. M.S. met J.R., permissive intervenor in this case, in 2014. M.S. and J.R. had a child, N.G.'s half-brother, and married in 2015 but divorced in 2016. The children remained with M.S. and had regular visits with J.R.

In August 2020, the Department of Children, Youth, and Families (the Department) received a report that M.S. was neglecting the children by locking them in their bedrooms for long periods of time, exposing them to drug paraphernalia, and failing to properly feed them. In October, the Pierce County juvenile court entered an

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

agreed shelter care order that placed N.G. and his half-sibling with J.R.  M.S. agreed to this placement in the November dependency order.

In the same month, J.R. moved for the juvenile court to grant concurrent jurisdiction over both children in family court so J.R. could modify his son's parenting plan and petition for nonparental custody of N.G.  The juvenile court granted the motion as to J.R.'s son but denied concurrent jurisdiction for N.G. "at this time."  Sealed Clerk's Papers (CP) at 12.  Despite concurrent jurisdiction over N.G. being denied, J.R. petitioned for de facto parentage in family court in December.  Although the family court proceedings are not included in the record, according to the parties the petition is still pending.

J.R. then filed a motion to intervene in the dependency.  J.R. argued he should be allowed to intervene as of right under CR 24(a) as a de facto parent or permissively under CR 24(b)(2).  M.S. opposed J.R.'s motion to intervene, arguing that J.R. had not been adjudicated N.G.'s de facto parent and that intervention was not in N.G.'s best interest because J.R. favored his biological son over N.G.  N.G.'s guardian ad litem supported J.R.'s motion to intervene, observing N.G. has a bonded relationship with J.R. and refers to J.R. as "'Dad.'"  CP at 101-02.

The juvenile court granted J.R.'s motion to intervene under CR 24(b) without explaining its reasoning.  M.S. filed a motion for discretionary review in Division Two of the Court of Appeals, arguing J.R.'s permissive intervention was a probable

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

error that substantially altered the status quo under RAP 2.3(b)(2). The Court of Appeals commissioner denied the motion, explaining that although it was probable error to allow J.R. to intervene under CR 24(b) without addressing the possible conflict of interest between M.S. and J.R., the error did not substantially alter the status quo as defined by *Howland*. The Court of Appeals denied M.S.'s motion to modify the commissioner's ruling, and M.S. filed a motion for discretionary review under RAP 13.5(b)(2). This court granted the motion to settle the meaning of "substantially alters the status quo" in RAP 2.3(b)(2) and RAP 13.5(b)(2) and to determine if J.R.'s permissive intervention satisfies those criteria.

ANALYSIS

A. *RAP 2.3(b)(2) and RAP 13.5(b)(2)'s Use of "Substantially Alters the Status Quo" Unambiguously Requires an Immediate Effect outside of the Courtroom*

The main issue on appeal is how to interpret RAP 2.3(b)(2) and RAP 13.5(b)(2). Interpretation of a court rule is a question of law we review de novo. *In re Citizen Complaint by Stout*, 198 Wn.2d 180, 184, 493 P.3d 1170 (2021). RAP 2.3(b) provides criteria for when the Court of Appeals may grant discretionary review of a trial court decision, while RAP 13.5(b) provides criteria for when this court may grant discretionary review of an interlocutory decision by the Court of Appeals. The parties agree the rules should be interpreted similarly because the language of the two rules are substantively identical. The parties also agree the rules' language is unambiguous. However, M.S. argues the plain language of RAP 2.3(b) and RAP

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

13.5(b) mandates a broad reading with no outside effects requirement such as those

dictated by *Howland*, while the Department and J.R. argue the *Howland* outside

effects requirement is the correct interpretation. Because the structure and language

of the RAPs, scholarly articles, and the drafting history of the RAPs support an

outside effects requirement, the court adopts the *Howland* outside effects

interpretation of RAP 2.3(b)(2) and RAP 13.5(b)(2).

     i.     *RAP 2.3(b)(2) and RAP 13.5(b)(2) Are Unambiguous*

RAP 2.3(b)(2) states the Court of Appeals may accept discretionary review if

the "superior court has committed probable error and the decision of the superior

court substantially alters the status quo or substantially limits the freedom of a party to

act." RAP 13.5(b)(2) uses identical language to describe when this court may accept

an interlocutory Court of Appeals decision for discretionary review. Both parties

argue "substantially alters the status quo" is unambiguous but offer significantly

different interpretations of the term. M.S. argues "substantially alters the status quo"

supports a broad reading consistent with the writs system before the RAPs were

enacted. On the other hand, the Department and J.R. argue "substantially alters the

status quo" supports incorporating an outside effects requirement as the Court of

Appeals held in *Howland*.

We interpret court rules using rules of statutory construction. *State v.*

*McEnroe*, 174 Wn.2d 795, 800, 279 P.3d 861 (2012). If a rule is plain on its face, the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

court must give effect to its plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Under the plain meaning rule, the language of a contested rule is "not read in isolation but 'in context, considering related provisions, and in light of the statutory or rule-making scheme as a whole.'" *Stout*, 198 Wn.2d at 184 (quoting *State v. Stump*, 185 Wn.2d 454, 460, 374 P.3d 89 (2016)). The court may use dictionary definitions to aid in interpreting terms not defined in the rule making scheme. *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991).

The RAPs do not define the term "status quo," so we first look to a dictionary definition. *Black's Law Dictionary* defines "status quo" as "[t]he situation that currently exists." BLACK'S LAW DICTIONARY 1703 (11th ed. 2019). This definition does not aid in interpreting RAP 2.3(b)(2) and RAP 13.5(b)(2) because it does not indicate whether "status quo" encompasses all litigation decisions or is limited to decisions that have impact outside the courtroom.

Next, the court looks to related rules and the RAPs as a whole. RAP 2.3(b) and RAP 13.5(b) are parallel rules that dictate when discretionary review may be granted to review a trial court's decision and a Court of Appeals interlocutory decision respectively. The subsections in RAP 2.3(b) and RAP 13.5(b) provide alternative criteria the lower court decision can meet to qualify for discretionary review. Subsection (b)(1) provides review may be granted if the lower court has committed

6

*In re the Dependency of N.G.*
No. 100008-1

"an obvious error which would render further proceedings useless" while (b)(3) provides review if the lower court "has so far departed from the accepted and usual course of judicial proceedings" as to warrant exercising appellate jurisdiction. When read as a whole, RAP 2.3(b) and RAP 13.5(b) are comprised of "specific and stringent" criteria that reflect the appellate system's "plain and intentional bias against interlocutory review." Geoffrey Crooks, *Discretionary Review of Trial Court Decisions Under the Washington Rules of Appellate Procedure*, 61 WASH. L. REV. 1541, 1545, 1547 (1986).

The structure of the rules clarify how to interpret "substantially alters the status quo." The criteria in RAP 2.3(b) provide that when there is a weaker argument for error, the petitioner must make a stronger showing of harm to qualify for discretionary review. *Minehart v. Morning Star Boys Ranch, Inc.*, 156 Wn. App 457, 462-63, 232 P.3d 591 (2010). Subsection (b)(1) requires a high certainty of error (obvious) but a less rigorous showing of harm (rendering further proceedings useless). Comparatively, (b)(2) provides discretionary review may be available if the lower court's error is "probable," which is less certain than "obvious" in (b)(1). Subsection (b)(2)'s lower certainty of error corresponds with a greater showing of harm to the petitioner, requiring the error to "substantially alter[] the status quo or substantially limit[] the freedom of a party to act" to qualify for discretionary review.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Given the structure of RAP 2.3(b), the immediate effects outside the courtroom interpretation of "substantially alters the status quo" advocated by *Howland* prevents RAP 2.3(b)(1) from being subsumed by RAP 2.3(b)(2) and becoming meaningless. This interpretation comports with our rule to "avoid interpreting court rules in a manner that would render substantive portions meaningless." *Phongmanivan v. Haynes*, 195 Wn.2d 309, 313-14, 458 P.3d 767 (2020). Conversely, under M.S.'s interpretation of RAP 2.3(b)(2), any error that renders further judicial proceedings useless would also substantially alter the status quo. Therefore, parties would always choose to argue the less rigorous "probable error" standard over the more stringent "obvious error" required in RAP 2.3(b)(1). To prevent RAP 2.3(b)(1) from becoming meaningless, RAP 2.3(b)(2) necessarily requires an immediate effect outside the courtroom to substantially alter the status quo.

ii. *The History of the Rules of Appellate Procedure, Scholarly Articles, and Case Law Analyzing RAP 2.3(b)(2) and RAP 13.5(b)(2) Support* Howland*'s Interpretation*

Although RAP 2.3(b)(2) is unambiguous and we do not require additional sources to interpret it, the history of the RAPs, scholarly articles, and case law further support the *Howland* interpretation. In *Howland*, the Court of Appeals was asked to grant discretionary review of the trial court's denial of Howland's petition for conditional release from Western State Hospital. 180 Wn. App. at 198. The Court of Appeals held the trial court's order was not appealable as of right and did not qualify

*In re the Dependency of N.G.*
No. 100008-1

for discretionary review under RAP 2.3(b)(2) because the denial of release did not substantially alter the status quo or limit her freedom to act. *Id*. at 206. In interpreting the effects prong, the court held that "where a trial court's action merely alters the status of the litigation itself or limits the freedom of a party to act in the conduct of the lawsuit, even if the trial court's action is probably erroneous, it is not sufficient to invoke review under RAP 2.3(b)(2)." *Id*. at 207. The court relied heavily on Supreme Court Commissioner Crooks' law review article on discretionary review published shortly after the RAPs were enacted. *See generally* Crooks, *supra*.

As a commissioner, Crooks' interpretation of RAP 2.3(b)(2) is persuasive. In his article, Crooks notes that RAP 2.3(b)(2) was "intended to apply 'primarily to orders pertaining to injunctions, attachments, receivers, and arbitration, which have formerly been appealable as a matter of right'" under the old writs system. *Id*. at 1545-46 (quoting former RAP 2.3 cmt. b (1976)). The actual language of RAP 2.3(b)(2) does not limit itself to injunctions, Crooks acknowledges, but without a limiting principle such as restricting discretionary review to probable errors that have "immediate effects outside the courtroom," it is incredibly difficult to delineate the difference between RAP 2.3(b)(1) and (b)(2). *Id*. at 1546.

Even after the publication of Crooks' article, the distinction between RAP 2.3(b)(1) and (b)(2) was muddled. Prior to *Howland*, the *Washington Appellate Practice Deskbook* viewed Crooks' position as limited and misleading, observing

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

RAP 2.3(b)(2) had "been used to address a broad range of decisions that affect the course of litigation but may not affect the case on the merits." WASH. STATE BAR ASS'N, WASHINGTON APPELLATE PRACTICE DESKBOOK §10.8(1), at 10-10 (3d ed. 2011). But after *Howland* was decided, the deskbook authors changed their view, stating RAP 2.3(b)(2) "typically requires a party to show that the party's substantive rights will be impaired in some fundamental manner outside of the pending litigation." WASHINGTON APPELLATE PRACTICE DESKBOOK §4.4(2)(b) at 4-37 (4th ed. 2016). The fourth edition of the deskbook also affirmatively cites *Howland* and Crooks' article. *Id*.

One of the judges on the panel in *Howland* further advocated for the immediate effects outside the courtroom interpretation in a recent law review article. Judge Dwyer, in collaboration with local practitioners, argued, "RAP 2.3(b)(2) should be limited to trial court orders granting or denying injunctive relief and other orders that impact parties' rights outside litigation proceedings." Stephen J. Dwyer, Leonard J. Feldman & Hunter Ferguson, *The Confusing Standards for Discretionary Review in Washington and a Proposed Framework for Clarity*, 38 SEATTLE U. L. REV. 91, 102 (2014). The authors reasoned that without the limiting principle requiring effects outside of the courtroom, the more favorable probable error standard of (b)(2) would render (b)(1) redundant because practitioners would always argue for discretionary review under (b)(2). *Id*. at 96; *see also Whatcom County v. City of Bellingham*, 128

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Wn.2d 537, 546, 909 P.2d 1303 (1996) ("Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.").

M.S. argues incorporating an immediate effects outside the litigation requirement unnecessarily reads into the rule what is not there. She argues that if case law is needed to interpret RAP 2.3(b)(2), cases predating the RAPs are appropriate to demonstrate continuity between the old system and the new system. This argument is unpersuasive. Under the old writ system, appellate courts retained "a measure of latitude" and discretionary power when they decided whether to grant writs of certiorari. *Bushman v. New Holland Div. of Sperry Rand Corp.*, 83 Wn.2d 429, 432, 518 P.2d 1078 (1974). However, when the RAPs were enacted in 1976, the drafters noted the process of granting review under extraordinary writ had become "'the most confusing of all the appellate procedures.'" Crooks, *supra*, at 1541 (quoting former RAP 2.1 cmt. b (1976)). The broad interpretation M.S. advocates blurs the line between RAP 2.3(b)(1) and (b)(2), creating confusion where the drafters intended clarity. *See* Crooks, *supra*, at 1554.

A broad reading of RAP 2.3(b)(2) is contrary to the history of the RAPs. The language and structure of RAP 2.3(b)(2) and RAP 13.5(b)(2) unambiguously requires an immediate effects outside the courtroom interpretation of "substantially alters the status quo" in order to give meaning to subsection (b)(1) and (b)(2) of the rules.

*In re the Dependency of N.G.*
No. 100008-1

Additionally, *Howland*'s rationale is supported by the historical context in which the RAPs were passed and endorsed by respected legal practitioners in the state. We affirm the Court of Appeals' adoption of the *Howland* interpretation of RAP 2.3(b)(2).

 B. *Denying Discretionary Review Was Proper Because J.R.'s Permissive Intervention Did Not Substantially Alter the Status Quo*

Applying the *Howland* rule to the facts of this case, J.R.'s permissive intervention did not substantially alter the status quo. Therefore, even though the trial court committed probable error when it failed to articulate the basis for J.R.'s permissive intervention, that error does not warrant discretionary review under RAP 2.3(b)(2).

 i. *The Court of Appeals Correctly Found Probable Error*

The Court of Appeals commissioner correctly concluded the trial court committed probable error when it granted J.R.'s permissive intervention without articulating its reasoning. Under CR 24(b)(2), any party may be permitted to intervene if the applicant's claim shares a question of law or fact with the original action. "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." CR 24(b)(2). Because the trial court has "considerable discretion to allow intervention" under CR 24(b)(2), permissive intervention will be reversed only if the trial court abused its discretion. *In re Adoption of M.J.W.*, 8 Wn. App. 2d 906, 917, 438 P.3d 1244 (2019).

12

A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Taylor*, 193 Wn.2d 691, 697, 444 P.3d 1194 (2019). A decision is manifestly unreasonable or based on untenable grounds "if it rests on facts unsupported in the record." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). The reviewing court is put into a difficult position, though, when the lower court does not articulate the basis for its reasoning at all. When the lower court is "completely silent" as to the reasons for its decision, the reviewing court "cannot say whether [the lower court] rested its decision on facts supported by the record." *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009). While we may overlook a court's abuse of discretion if there is evidence to support the decision in the pleadings and proof, the court cannot overlook an abuse of discretion when the court "ha[s] no insight into the lower court's reasoning." *Id*.

In this case, the trial court did not explain its reasoning for granting permissive intervention under CR 24(b)(2). The trial court did not hear oral argument on the merits of the motion for intervention, explaining on the record only that it would consider all of the documents submitted in connection to the motion. Verbatim Report of Proceedings at 22. The written order entered the next day stated only that intervention was granted under CR 24(b). While CR 24(b)(2) does not require the trial court to enter written findings, if the trial court does not demonstrate somewhere on the record that it considered whether intervention would cause undue delay or

prejudice, the court has abused its discretion no matter how the CR 24(b)(2) motion is decided.

Additionally, M.S. argues the trial court abused its discretion because the permissive intervention was based on untenable grounds. This reasoning is based on a line of cases holding intervention by nonparents is rarely appropriate. *In re Welfare of Coverdell*, 39 Wn. App. 887, 891, 696 P.2d 1241 (1984). However, recent decisions have allowed prior guardians to intervene to petition for de facto parentage. *See In re Dependency of J.W.H.*, 147 Wn.2d 687, 57 P.3d 266 (2002); *In re Dependency of C.R.O'F.*, 19 Wn. App. 2d 1, 11, 493 P.3d 1235 (2021). Although J.R. has not yet been adjudicated a de facto parent, his petition for de facto parentage and documents in the record present a prima facie petition for de facto parentage. *See In re Parentage of J.D.W.*, 14 Wn. App. 2d 388, 409, 471 P.3d 228 (2020). In summary, while case law and declarations in the record support J.R.'s permissive intervention, the trial court abused its discretion by not stating its reason for allowing permissive intervention.

   ii.   *J.R.'s Permissive Intervention Did Not Substantially Alter the Status Quo*

Despite the trial court's probable error, discretionary review was properly denied because the error did not substantially alter the status quo under RAP 2.3(b)(2). Even if this court adopted M.S.'s broad interpretation of "substantially

*In re the Dependency of N.G.*
No. 100008-1

alters the status quo" to include substantial changes within the litigation, J.R.'s permissive intervention does not meet this threshold.

The purpose of dependency proceedings is to preserve a child's family unit or otherwise protect a child's right to "a safe, stable, and permanent home." RCW 13.34.020. M.S. argues J.R.'s permissive intervention substantially alters the status quo because J.R. is not N.G.'s parent and his inclusion shifts the focus of the dependency proceeding from family reunification to a custody battle. Conversely, J.R. and the Department argue J.R.'s intervention is necessary for his petition for de facto parentage and is not contrary to the purpose of dependency.

J.R.'s presence in the dependency proceeding does not substantially alter the status quo inside or outside the litigation. J.R. has been N.G.'s dependency guardian since the shelter care hearing, and this role remains unchanged after his intervention. As M.S. notes, J.R. already has a limited right to be heard as N.G.'s dependency guardian. RCW 13.34.096(1). Granting J.R. party status as a permissive intervenor to move for de facto parentage does not substantially alter the status quo because J.R. was already involved in the dependency proceeding, albeit in a limited fashion. While this reflects a change in the status quo, it is not substantial.

J.R.'s intervention also does not substantially change the status quo or limit M.S.'s freedom to act by shifting the focus of the dependency proceeding because his intent to present himself as a de facto parent furthers the dependency's goal of

15

preserving N.G.'s family unit and providing him with a stable home. J.R. is the custodial guardian of N.G.'s half-brother, whom N.G. lived with before the dependency. While living with a different parent alters the family unit, adjudicating J.R. as a de facto parent and placing N.G. with J.R. and N.G.'s half-brother would also preserve N.G.'s family unit. Additionally, J.R.'s intervention did not change the status quo outside the courtroom. After J.R.'s intervention, N.G. remained in J.R.'s custody, and M.S. was free to continue following the Department's remedial steps and visit N.G.

In summary, even though the trial court probably erred when it did not state its reason for granting J.R.'s permissive intervention, the intervention did not substantially alter the status quo under any interpretation of RAP 2.3(b)(2). Accordingly, the Court of Appeals correctly dismissed M.S.'s motion for discretionary review.

CONCLUSION

The court adopts *Howland*'s interpretation of RAP 2.3(b)(2) and holds that "substantially alters the status quo" requires an immediate effect outside the courtroom. The former stepfather's permissive intervention in this case did not substantially alter the status quo inside or outside the litigation. We affirm the Court of Appeals and remand the case to the trial court for further proceedings.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re the Dependency of N.G.*
No. 100008-1

_____
Owens, J.

WE CONCUR:

_____      _____

_____
Johnson, J.

_____      _____
Madsen, J.                             Whitener, J.

_____      _____
Stephens, J.                           Staab, J.P.T.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Dependency of N.G.*, No. 100008-1
(Gordon McCloud, J., concurring)

No. 100008-1

GORDON McCLOUD, J. (concurring)—I agree with the majority that the trial court committed probable error when it failed to articulate why it allowed permissive intervention under CR 24(b)(2). I also agree that J.R.'s permissive intervention did not "substantially alter the status quo" either "inside or outside the litigation," Majority at 16-17, under RAP 2.3(b)(2).

I disagree, however, with the majority's extratextual limitations on RAP 2.3(b)(2). Nothing in the text of RAP 2.3(b)(2) or its related provisions indicates that the drafters intended to limit that subsection of the rule to interlocutory decisions that have effects outside the litigation. An impact outside the courtroom is certainly *one* way to "substantially alter the status quo." But as I read the rule, it is not the only way.

I therefore respectfully concur.

ANALYSIS

RAP 2.3(b) provides that a decision of the trial court "may be accepted" for discretionary review "only in the following circumstances":

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(1) The superior court has committed an obvious error which would render further proceedings useless;

(2) The superior court has *committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act*;

(3) The superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court; or

(4) The superior court has certified, or that all parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.

(Emphasis added.)

We interpret court rules using the same interpretive tools as statutes. *Jafar v. Webb*, 177 Wn.2d 520, 526, 303 P.3d 1042 (2013). "If the rule's meaning is plain on its face, we must give effect to that meaning as an expression of the drafter's intent." *Id.* (citing *Gourley v. Gourley*, 158 Wn.2d 460, 466, 145 P.3d 1185 (2006) (plurality opinion)). The "[p]lain meaning is discerned from reading the rule as a whole [and] harmonizing its provisions." *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007) (citing *State v. Williams*, 158 Wn.2d 904, 908, 148 P.3d 993 (2006)). Only if we determine that the plain language is ambiguous do we turn to legislative history and

*In re Dependency of N.G.*, No. 100008-1
(Gordon McCloud, J., concurring)

relevant case law. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)

("The surest indication of legislative intent is the language enacted by the

legislature." (citing *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281

(2005))); *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). "If the

language of a statute is clear on its face, courts must give effect to its plain

meaning and should assume the Legislature means exactly what it says." *State

v. Chapman*, 140 Wn.2d 436, 450, 998 P.2d 282 (2000).[1]

The majority begins with the argument that RAP 2.3(b)(2) is

unambiguous and that the rule's plain language requires an "effect outside the

courtroom" or "outside the litigation." Majority at 4, 7-11.

I respectfully disagree. There is nothing in RAP 2.3(b)(2) that

differentiates between actions inside the courtroom and actions outside the

courtroom; it necessarily follows that there is nothing in that subsection of the

rule that *requires* an effect outside the courtroom rather than just inside. The

plain language says only that the interlocutory decision of which review is

sought may qualify for review if it "substantially alters the status quo" and, as

the majority states, "status quo" is defined as the "'situation that currently

exists.'" Majority at 6 (quoting BLACK'S LAW DICTIONARY 1703 (11th ed.

---

[1] *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996); *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 329, 815 P.2d 781 (1991).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

2019)). If the drafters intended to limit this rule to interlocutory decisions that cause "effects outside the courtroom," or to orders available under the old writ system, they could have said that. *Chapman*, 140 Wn.2d at 450 (we must assume the drafters meant what they said). But they did not.

The majority argues that RAP 2.3(b)(2) unambiguously requires an outside-the-courtroom effect because that limitation is the only way to prevent RAP 2.3(b)(1) from becoming "meaningless." Majority at 8. I certainly agree with the majority that we must try to harmonize all provisions of a rule "'so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). But, I disagree that adding this extratextual limitation on discretionary interlocutory review is the only way to make sure that RAP 2.3(b)(1) is not "meaningless." Majority at 8.

RAP 2.3(b)(2)'s prerequisites to discretionary review are "probable error" and "substantially alters the status quo." These prerequisites are easier to meet than RAP 2.3(b)(1)'s "obvious error" and "render[s] further proceedings useless" prerequisites: an action that renders the further

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

proceedings useless under subsection (1) likely will meet subsection (2)'s standard. However, this kind of overlap occurs throughout the RAPs. RAP 13.4(b) provides a good example.  Under that rule, this court may accept review if a decision of the Court of Appeals conflicts with a decision of our court or another published decision by the Court of Appeals, *or* if that decision presents a significant question of law under the Washington or United States Constitutions, *or* if the decision involves an issue of substantial public interest. These alternative prerequisites to review all overlap. Some list more specific reasons for accepting review (e.g., conflict between two Court of Appeals' decisions), while others list broader reasons for accepting review (e.g., substantial public interest). But a conflict between two Court of Appeals' decisions could also raise a question of substantial public interest. This overlap does not make either provision meaningless.

I read RAP 2.3 the same way. RAP 2.3(b)(1) provides a narrow and important instance in which review might be warranted; RAP 2.3(b)(2) provides a broader standard under which review might also be warranted.

The majority relies on two outside sources to support its reading.[2] First, it cites a law review article written by former Washington Supreme Court

---

[2] Despite determining that the RAP 2.3(b)(2) is "unambiguous" the majority goes on to examine the history and case law interpreting that rule, despite statutory authority

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Commissioner Geoffrey Crooks. That article in turn cites the rule's comments, not its text, to show that "[s]ubsection (b)(2) was *intended* to apply '*primarily* to orders pertaining to injunctions, attachments, receivers, and arbitration, which have formerly been appealable as a matter of right.'" Geoffrey Crooks, *Discretionary Review of Trial Court Decisions Under the Washington Rules of Appellate Procedure*, 61 WASH. L. REV. 1541, 1545-46 (1986) (emphasis added) (quoting RAP 2.3 cmt. b). He then goes on to say that "[*i*]*t can be argued*, however, that subsection (b)(2) should be applied only when a trial court's order has immediate effects outside the courtroom." *Id.* at 1546 (emphasis added). In other words, former Commissioner Crooks' article introduces an argument for this possible interpretation of RAP 2.3(b)(2) based on a sentence in the comments to the rule, but he does not cite any authority for the assertion that the majority draws from his argument, i.e., that the drafters *intended* to limit the rule to the effects-outside-the-courtroom context.

In contrast, I think that the best evidence of the drafter's intent is the language that the drafters used for this rule. And former Commissioner

---

principles militating against this. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002) (only appropriate to resort to other aids of construction, including legislative history, if the court determines the language is "ambiguous").

*In re Dependency of N.G.*, No. 100008-1
(Gordon McCloud, J., concurring)

Crooks himself acknowledged that "[n]othing in subsection (b)(2) limits its applicability to cases involving injunctions and the like." *Id.*

The majority also cites to *State v. Howland*, 180 Wn. App. 196, 321 P.3d 303 (2014), as authority for this outside-effects interpretation. Majority at 9. *Howland*, however, relies only on former Commissioner Crooks' law review article for its outside-effects requirement; *Howland* engages in no analysis of the text itself. *Id.* at 206-07.

I therefore disagree with the majority's incorporation of the extratextual "effects outside the litigation" prerequisite into RAP 2.3(b)(2).

Still, I agree with the majority's conclusion: J.R.'s intervention did not "substantially alter the status quo." In fact, when the majority applies RAP 2.3(b)(2) to the facts of this case, the majority actually discusses impacts both inside and outside the litigation and says that none of them are drastic enough to warrant review. Majority at 16-17. I agree with that discussion.

CONCLUSION

I agree with the majority that the trial court committed probable error in granting J.R. permissive intervention without stating a reason; I also agree with the majority that the error it identifies does not "substantially alter the status quo."

7

*In re Dependency of N.G.*, No. 100008-1
(Gordon McCloud, J., concurring)


However, I disagree with the majority's extratextual limitation of RAP 2.3(b)(2) to

effects outside the courtroom.

For that reason, I respectfully concur.


_____
                 Gordon McCloud, J.

_____
                 González, C.J.

_____
                 Yu, J.